596 A.2d 1049

**INLET ASSOCIATES, Piper & Marbury and George A. Nilson**

v.

**HARRISON INN INLET, INC. and K. King Burnett.**

**No. 151, Sept. Term, 1990.**

Court of Appeals of Maryland.

Oct. 11, 1991.

Wilbur D. Preston, Jr. (Louis P. Ruzzi, Whiteford, Taylor and Preston, all on brief), Baltimore, for petitioners/cross-respondents.

Robert L. Hanley, Jr. (Nolan, Plumhoff & Williams Chartered, all on brief), Towson, Alvin I. Frederick (George D. Bogris, Eccleston & Wolf, all on brief), Baltimore, for respondents/cross-petitioners.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

CHASANOW, Judge.

We granted certiorari in the instant case to determine what standard of appellate review should be applied when a trial court has imposed sanctions in the form of costs and attorney's fees pursuant to Maryland Rule 1–341. The facts giving rise to this controversy cannot be stated as simply and succinctly as the issue before the Court.

This appeal arises out of a $22,000,000 lawsuit filed by Inlet Associates (Inlet) against Harrison Inn Inlet, Inc., Harrison Inn Sixty–Six, Inc., Hale Harrison, John Harrison (the Harrisons), and their attorney, K. King Burnett, for abuse of process and malicious interference with prospective business advantage. Inlet is a Maryland partnership that was formed in 1984 for the purpose of developing a parcel of land, known as Holt's Landing, in Ocean City, Maryland. Inlet's managing partner is an architect, Leo D'Aleo (D'Aleo). The Harrisons own property adjacent to Holt's Landing.

In 1984, the Harrisons hired D'Aleo to design a high-rise condominium building to be located on their property adjacent to the Holt's Landing site. At about the same time, the Harrisons and Inlet had discussions about jointly developing and constructing a marina in front of their adjacent properties. For reasons that shall become apparent, the joint development of the marina never occurred. As a result of litigation by another neighboring property owner, the Harrisons lost a height variance that was essential to their high-rise project. Shortly thereafter, they approached D'Aleo and asked him to abate a portion of his architectural fees for their high-rise project. It was suggested to D'Aleo that, unless he did so, the Harrisons would no longer participate in joint development of the marina property. D'Aleo refused to abate any of his architectural fees and informed the Harrisons that Inlet would, without the Harrisons, develop the marina, as well as a hotel and condominium project (the Inlet project). D'Aleo sued the Harrisons and recovered his architectural fees, and the Harrisons began a series of legal actions to block the Inlet project.

Initially, the Harrisons sought to prohibit the town of Ocean City from transferring to Inlet, without ordinances, a portion of a public street and the riparian rights at the end of the street, which were to be used for the Inlet project. They successfully obtained an injunction prohibiting the transfer, which was affirmed on appeal. *Inlet Associates v. Assateague House*, 313 Md. 413, 545 A.2d 1296 (1988).

While the appeal of the injunction was pending, Inlet amended the plans for the project and submitted the amended plans to appropriate agencies of the town of Ocean City. The Harrisons, with Burnett as their attorney, challenged the amended plans. The Ocean City Planning and Zoning Commission and zoning administrator approved Inlet's amended plans and issued a building permit. The Harrisons filed three separate appeals with the Board of Zoning Appeals, and when those appeals were unsuccessful, they sought review in the Circuit Court for Worcester County. The Harrisons filed separate appeals of the Board of Zoning

Appeals' oral decisions, as well as its written opinions "in an abundance of caution to insure the preservation of the right to appeal." They did, however, request that all of the appeals be consolidated, and this was done by the trial judge. The Harrisons also filed suit seeking declaratory and injunctive relief "solely as a protective action due to uncertainty concerning the right to take an administrative appeal from the decision of the Planning and Zoning Commission." Thus, there were six circuit court actions filed by the Harrisons, all of which were consolidated for trial.

Until early 1988, Inlet was represented by Gerard P. Martin. Martin contacted George A. Nilson to inquire whether Nilson and his law firm, Piper and Marbury, (herein collectively Nilson) would take over the representation of Inlet in its litigation with the Harrisons. On February 17, 1988, Nilson entered into an agreement to represent Inlet. Under the terms of that agreement, Nilson would receive a bonus of an additional 50% of his hourly rate if he was able to persuade the Harrisons to drop their opposition to Inlet's project within one month. The bonus provision apparently was extended for an additional month.

Martin also provided Nilson with a draft bill of complaint of Inlet against the Harrisons alleging abuse of process and malicious interference with prospective business advantage. This draft complaint named the Harrisons as defendants, but did not name their attorney, Burnett. The day after Nilson was retained by Inlet, he wrote to Burnett advising him that if the parties did not meet before March 3, 1988, to resolve their differences, suit would be filed by Inlet against the Harrisons and Burnett for "abuse of process and related matters." With that letter, Nilson also enclosed a draft bill of complaint. This draft complaint differed from the one provided to Nilson by Martin in that Burnett was added as a defendant.

The meeting of the parties suggested by Nilson did not take place. Citing a conflict of interest, Burnett informed Nilson that he could no longer participate in any settlement negotiations or advise the Harrisons about settlement.

Burnett's concern about a conflict of interest was based on his belief that his representation of the Harrisons might be compromised by the suit against him personally. *See* The Maryland Lawyers' Rules of Professional Conduct, Rule 1.7 (1991). Burnett was concerned that, if he had counseled the Harrisons to withdraw their opposition to the Inlet project, his advice might be perceived as being partially motivated by his own self-interest. It might give the appearance that his actions were directed at avoiding being a defendant in a lawsuit, rather than being motivated solely by his clients' best interest.

On April 11, 1988, Nilson, on behalf of Inlet, filed suit against the Harrisons and Burnett for abuse of process and malicious interference with prospective business advantage (herein collectively the abuse of process suit). The *ad damnum* clause sought compensatory and punitive damages in the amount of $22,000,000. For approximately 18 months, Nilson took no steps to prosecute the claims asserted by Inlet.

Subsequent to the filing of the abuse of process suit, the Circuit Court for Worcester County affirmed the decisions of the Board of Zoning Appeals, rejecting the challenges filed by the Harrisons. The Harrisons appealed that decision and, in an unreported decision, the Court of Special Appeals reversed the circuit court, thereby finding that the Harrisons' challenges to the Inlet project were well founded.

Following the Court of Special Appeals' resolution of the challenges to the Inlet project in the Harrisons' favor, the circuit court found in favor of the Harrisons and Burnett in Inlet's abuse of process suit. Count I (abuse of process) was dismissed as to all defendants, and Count II (malicious interference with prospective business advantage) was dismissed as to Burnett. Summary judgment was entered in favor of the Harrisons on Count II. The Harrisons and Burnett filed motions for costs and attorney's fees pursuant to Rule 1–341. After a hearing, the circuit court denied the Harrisons' motion but granted Burnett's motion and as-

sessed costs and attorney's fees against Inlet, Nilson, and Piper and Marbury in the amount of $15,368.23. In rendering his decision, the trial judge stated:

"Everybody knows what the facts are. To put them in their simplest terms, it appears to the court that the parties to this litigation were originally jointly involved in developing certain property in Ocean City, Maryland. That there was an—I don't want to say falling out among thieves, but falling out among the parties. That Inlet Associates, the plaintiff in this particular action, attempted to scale down the project in pursuance of certain permits which had previously been received, but that there were ongoing hearings before the Board of Zoning Appeals and other administrative bodies in Worcester County and/or Ocean City. I think there were [six] appeals....

While all this was going on these cases were at that point pending, either in the Circuit Court for Worcester County or on appeal to the appellate courts of this State. The plaintiffs hired Mr. George Nilson of the firm of Piper and Marbury, at the behest of Mr. Martin.... I assume, for the express purpose, that the court finds, to see if there was not some manner in which all the other ongoing litigation could be settled.

One of the provisions of the retainer of Mr. Nilson was a provision for a bonus if the case was settled within a short period of time, and if not then he would be paid at his regular office rate. It is obvious to the court that being the provision, even though it's not in there, time was of the essence. His efforts to effect settlement negotiations within the short period of time did not come to fruition....

During this period a draft copy of, with some modifications, the complaint which was ultimately filed in this case being sent to Mr. Burnett, the court's thinking was an obvious act of intimidation to effect a settlement.

It is the court's thinking in a hearing on this matter in Worcester County on October 12 of 1988, this member of

the court granted—October 20, 1988, granted Mr. Burnett's motion to dismiss both counts of the complaint, first count of which alleged abuse of process, and the second count which alleged malicious interference with a business relationship.  The motion was denied as to malicious interference with a business relationship as far as the Harrisons were concerned.

As a matter of law those are the facts boiled down to their very basics.  That's not as lengthy a statement as I'd like to give you, but I think I touched the major points.

As a matter of law reasonable basis for believing that a case is colorable and/or has a colorable claim or defense is that it generates a factual issue for the fact finder at trial, and that provides substantial justification for initiating or defending an action, as I understand the law to be as set forth in [*Needle v. White,* 81 Md.App. 463, 568 A.2d 856, *cert denied,* 319 Md. 582, 573 A.2d 1338 (1990) ], . . . I'll take the Harrisons first.

I cannot on the facts before me, and which were heard at argument in October of 1988, say that that whole case lacked substantial justification.  The second count, motion to dismiss, was to the interference with a contract, was denied because the court at that time stated or at least felt—if it wasn't stated, it was the court's opinion that if the facts alleged in that court could be proved as to the Harrisons there may have well been substantial justification for the institution of the action.

We do, however, find that the claim against Mr. Burnett was instituted in bad faith and without substantial justification.  Mr. Nilson to his credit very candidly admitted in oral argument in October of '88 that there was no post-process abuse to substantiate the claim for abuse of process, and that frankly pertained to the Harrisons under the first count; and I think the motion was granted as to both parties as to the first count.

But as to the second count as it pertains to Mr. Burnett, I find there was not a colorable claim; and again,

frankly no evidence or allegation of malice, nor was there any substantial justification for the filing of that claim. We are, therefore, constrained to grant Mr. Burnett's motions for sanctions, the amount of which I think is undisputed to be $15,368.23. That is assessed against Inlet Associates, Inc., Piper and Marbury, and George Nilson.

Motion for sanctions by the Harrisons is denied."

Inlet and Nilson appealed the assessment of costs and attorney's fees against them in favor of Burnett. The Harrisons appealed the decision of the trial court denying their motion for costs and attorney's fees. Inlet also appealed the judgments in favor of the Harrisons and Burnett in the underlying tort action.

This Court granted the petition for writ of certiorari filed by Inlet and Nilson prior to consideration of the case by the Court of Special Appeals. As we stated at the outset, the issue raised by the petition for writ of certiorari was what standard of appellate review should be applied where a trial court imposes sanctions in the form of costs and attorney's fees pursuant to Rule 1–341.

At oral argument, we were informed by counsel for Inlet and Nilson that Inlet is defunct and no longer seeks a reversal of the judgment in favor of the defendants on the abuse of process and malicious interference with prospective business advantage counts. The validity of these counts may still be relevant to the two remaining appeals, *i.e.*, the appeal by Nilson of the award of costs and attorney's fees to Burnett, and the Harrisons' appeal of the failure to award them costs and attorney's fees.

## STANDARD OF REVIEW

Rule 1–341 provides:

"In any civil action, if the court finds that the conduct of any party in maintaining or defending any proceeding was in bad faith or without substantial justification the court may require the offending party or the attorney

advising the conduct or both of them to pay to the adverse party the costs of the proceeding and the reasonable expenses, including reasonable attorney's fees, incurred by the adverse party in opposing it."

Apparently recognizing that the standard of review may well be dispositive of this appeal, Nilson and Inlet assert that the "clearly erroneous" standard is not the appropriate standard of review of a trial court's decision to award costs and attorney's fees pursuant to Rule 1–341. They contend that *de novo* review is desirable in order to "create uniformity in the treatment of Rule 1–341 cases." They point out that other courts have recognized and applied a *de novo* standard of review to test the legal conclusion of whether the imposition of sanctions was justified and cite by way of example, *Zaldivar v. City of Los Angeles,* 780 F.2d 823 (9th Cir.1986); *Eastway Const. Corp. v. City of New York,* 762 F.2d 243 (2nd Cir.1985), *cert denied,* 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987); *Turner v. Duke University,* 325 N.C. 152, 381 S.E.2d 706 (1989). The parties agree that this Court has never expressly adopted a standard of review where sanctions have been imposed under Rule 1–341. They disagree, however, as to what standard we should apply. The Court of Special Appeals has spoken on the issue and has adopted the "clearly erroneous" standard. *See, e.g., Needle,* 81 Md.App. 463, 568 A.2d 856; *Bohle v. Thompson,* 78 Md.App. 614, 639, 554 A.2d 818, 830, *cert denied,* 316 Md. 364, 558 A.2d 1206 (1989); *Dent v. Simmons,* 61 Md.App. 122, 127, 485 A.2d 270, 272 (1985). Compare *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. ——, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990), where the Supreme Court held that federal appellate courts should apply the abuse of discretion standard in reviewing a district court's decision to impose sanctions under Rule 11 of the Federal Rules of Civil Procedure.

The standard for appellate review depends in some measure on whether we view a finding of bad faith or lack of substantial justification as a finding of fact which should not be set aside unless clearly erroneous, Rule 8–131(c), or

as a conclusion of law subject to *de novo* review. We find persuasive logic and reasoning in the recent case of *American Hospital Association v. Sullivan,* 938 F.2d 216 (D.C.Cir.1991) where the court stated:

> "When the question requires a court to determine credibility or to compare the weights of evidentiary items, an appellate court must remember two humbling factors: (1) 'the superiority of the trial judge's position to make determinations of credibility,' and (2) the principle that '[t]he trial judge's major role is the determination of fact, and with experience in fulfilling that role comes expertise.' [*Anderson v. Bessemer City,* 470 U.S. 564, 574, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518, 529 (1985)]. Therefore, we conclude that the question of bad faith in the context of the common law exception to the American rule on counsel fees—involving as it does credibility determinations and evidentiary weighing as opposed to the application of rules of the law to matters of fact (either conceded or already determined)—is one of fact requiring a clearly erroneous standard of review, not one of law requiring *de novo* review. It is certainly possible in a specific case that an evidentiary base might not support findings of fact consistent with a finding of bad faith as a matter of law or that subsidiary findings on such evidence might not support an ultimate finding of bad faith."

*Id.* at 221–222.

■ There is an additional aspect of appellate review of a trial judge's decision to award sanctions under Rule 1–341. If the judge makes the requisite finding that a litigant acted in bad faith or without substantial justification, the judge should not automatically impose sanctions. After finding bad faith or lack of substantial justification, the judge should then exercise discretion in deciding, in light of those findings, whether costs and/or attorney's fees should be awarded.

The predecessor to Rule 1–341 was Rule 604b. That rule provided:

"In an action or part of an action, if the court finds that any proceeding was had (1) in bad faith, (2) without substantial justification, or (3) for purposes of delay, the court *shall* require the moving party to pay to the adverse party the amount of the costs thereof and the reasonable expenses incurred by the adverse party in opposing such proceeding, including reasonable attorneys' fees." (Emphasis added.)

Rule 604b made sanctions mandatory after a finding of bad faith or lack of substantial justification. On August 1, 1983, the Honorable John F. McAuliffe, then Chairman of the Rules Committee and now a member of this Court, in a letter to this Court acknowledged the change from the mandatory nature of sanctions under former Rule 604b to the permissive nature of sanctions under the present Rule 1–341,

"While the subcommittee acknowledges the substitution of the word 'may' for the word 'shall' in this Rule, it notes that this change is not consistent with the current trend towards strengthening the provisions for sanctions designed to curb abuses of the rules. The Supreme Court recently ordered that FRCP 11 be amended, effective August 1, 1983. The amendment substitutes mandatory language for permissive language relative to imposition by the court of sanctions. Current Maryland Rule 604b, from which Rule 1–341 is derived, is also phrased in terms of mandatory imposition of sanctions once the court makes a finding that a proceeding was had for an improper purpose."

Thus, before imposing sanctions in the form of costs and/or attorney's fees under Rule 1–341, the judge must make two separate findings that are subject to scrutiny under two related standards of appellate review. First, the judge must find that the proceeding was maintained or defended in bad faith and/or without substantial justification. This finding will be affirmed unless it is clearly erroneous or involves an erroneous application of law. Second, the judge must find that the bad faith and/or lack of

substantial justification merits the assessment of costs and/or attorney's fees. This finding will be affirmed unless it was an abuse of discretion.

## BAD FAITH OR LACK OF SUBSTANTIAL JUSTIFICATION

■ The parties are in agreement, and we concur, that the test for determining lack of substantial justification, which should be applied in the instant case, is whether Nilson had a reasonable basis for believing that the claims would generate an issue of fact for the fact finder. This test has been utilized by the Court of Special Appeals in several cases. For example in *Needle v. White*, 81 Md.App. at 476, 568 A.2d at 863, the Court of Special Appeals defined substantial justification as "a reasonable basis for believing that a case will generate a factual issue for the fact-finder at trial." See also *Newman v. Reilly*, 314 Md. 364, 550 A.2d 959 (1988), where this Court stated that, to constitute substantial justification, the parties position should be "fairly debatable" and "within the realm of legitimate advocacy." *Id.* at 381, 550 A.2d at 967–68. Additional guidelines are also found in the comment to Rule 3.1 of the Maryland Lawyers' Rules of Professional Conduct, which states that an action is frivolous if "the lawyer is unable either to make a good faith argument on the merits of the action taken or to support the action taken by a good faith argument for extension, modification or reversal of existing law."

■ "In bad faith" means vexatiously, for the purpose of harassment or unreasonable delay, or for other improper reasons. *See Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 766, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488, 501 (1980); *Johnson v. Baker*, 84 Md.App. 521, 581 A.2d 48, *cert. denied*, 322 Md. 131, 586 A.2d 13 (1990).

## THE HARRISONS' APPEAL

■ The Harrisons assert that the trial judge erred in failing to award them costs and attorney's fees pursuant to

Rule 1–341. They argue that the judge was in error if he found that Inlet's suit against them did not lack substantial justification. Based on the facts previously set forth and the oral opinion of the trial judge, we hold that the judge did conclude that Inlet's suit against the Harrisons had substantial justification and that this finding was not clearly erroneous.

The Harrisons also contend that, because the judge clearly found bad faith in Inlet's suit against Burnett, he must have by implication also found bad faith in Inlet's suit against them. We do not agree. In *Zdravkovich v. Bell Atlantic–Tricon Leasing Corp.*, 323 Md. 200, 592 A.2d 498 (1991), this Court stated:

> "The imposition of sanctions pursuant to Rule 1–341 requires an explicit finding that a claim or defense was 'in bad faith or without substantial justification.' The record must reflect that the trial judge made the requisite findings, as well as the basis for those findings."

*Id.* at 210, 592 A.2d at 503. Even though the trial judge found bad faith in Inlet's suit against Burnett, the judge did not explicitly find that Inlet's suit against the Harrisons was filed or pursued in bad faith. The failure to find bad faith in the suit against the Harrisons was not clearly erroneous. Thus, since there was no express finding of either bad faith or lack of substantial justification, the Harrisons were not entitled to an award of costs and counsel fees under Rule 1–341. We note that even if the Harrisons were correct in their suggestion that the judge found bad faith or lack of substantial justification, a decision to deny costs or attorney's fees to the Harrisons would not be an abuse of discretion.

### NILSON'S APPEAL

Burnett acted as counsel for the Harrisons in pursuing their remedies as aggrieved property owners and taxpayers. For the purposes of this case, we will assume that an attorney could be personally liable for an abuse of process or malicious interference with prospective business

advantage based on a suit filed on behalf of a client. *See* Annotation, *Civil Liability of Attorney for Abuse of Process*, 97 A.L.R.3d 688 (1980). Nilson first contends that the trial court misstated and misapplied the standard for determining whether an action was instituted without substantial justification. This argument is based upon a statement made by the judge that:

> "As a matter of law reasonable basis for believing that a case is colorable and/or has a colorable claim or defense is that it generates a factual issue for the fact finder at trial, and that provides substantial justification for initiating or defending an action, as I understand the law to be as set forth in [*Needle v. White*, 81 Md.App. 463, 568 A.2d 856 (1990)], ... I'll take the Harrisons first."

We do not believe that this single ambiguous statement indicates that the judge misperceived or misapplied the law. In fact, taken in context it indicates just the opposite. In the next sentence, the judge determines that Inlet's suit against the Harrisons did *not* lack substantial justification. That single statement taken out of context does not negate the presumption that the trial judge knew and properly applied the law.

The trial judge was not clearly erroneous in sanctioning Nilson and Inlet for the abuse of process suit against Burnett. Although the judge did not find bad faith or lack of substantial justification in Inlet's suit against the Harrisons, he expressly found both in Inlet's suit against Burnett. The complaint in the abuse of process suit, as originally drafted by Martin, named the Harrisons as defendants; it did not name Burnett. The judge could conclude that Nilson knew that Burnett had simply pursued several lawsuits on behalf of his clients and that Nilson had no reason to believe that Burnett had the intent to maliciously interfere with prospective business advantage or the intent to utilize legal process in an improper manner or for a result not contemplated by law. Nilson's bill of complaint on behalf of Inlet was predicated on the lack of merit of the Harrisons' legal challenges to the Inlet project. Burnett

believed and convinced the Court of Special Appeals that the Harrisons' challenges had merit. The trial judge expressly found that, under the circumstances of this case, mailing the draft complaint to Burnett was an act of intimidation clearly intended to force Burnett and the Harrisons to settle other collateral litigation. From these facts, the judge could have inferred that Burnett was joined in the abuse of process suit, not because Inlet and Nilson wished to recover tort damages from him, but to intimidate him into encouraging his clients to dismiss their legal challenges to the Inlet project. Further inferences of bad faith may be drawn from a letter by Martin to Nilson telling Nilson that he should inform Alvin I. Frederick (counsel retained to represent Burnett in the abuse of process litigation) that, "if the Harrisons would simply drop their lawsuits in the Circuit Court for Worcester County, the entire matter would go away."

Filing a lawsuit against an attorney based on conduct as an advocate that is filed not for the purpose of seeking redress, but for the purpose of coercing the attorney to settle other collateral litigation, can certainly justify a finding of bad faith. The trial judge was not clearly erroneous in finding both bad faith and lack of substantial justification in Inlet's suit against Burnett, and the judge did not abuse his discretion in assessing costs and attorney's fees under Rule 1–341.

JUDGMENT OF THE CIRCUIT COURT FOR WORCESTER COUNTY AFFIRMED. COSTS TO BE PAID BY PETITIONERS.

ROBERT M. BELL, Judge, dissenting.

In *Zdravkovich v. Bell Atlantic–Tricon Leasing Corp.*, 323 Md. 200, 592 A.2d 498 (1991), Judge Chasanow, the author of the majority opinion, speaking for the Court, made several insightful comments concerning the application of Maryland Rule 1–341. Beginning the assessment of counsel fees discussion, he observed:

"Rule 1–341 can be an effective tool for the deterrence of unnecessary or abusive litigation. Unfortunately, like many tools, if improperly used or if abused, it is capable of inflicting excessive or unwarranted injury."

*Id.*, 323 Md. at 209, 592 A.2d at 503. Concluding that discussion, Judge Chasanow asserted:

"Rule 1–341 is not intended to simply shift litigation expenses based on relative fault. Its purpose is to deter unnecessary and abusive litigation. The imposition of sanctions requires explicit factual findings supported by the record, as well as a careful exercise of judicial discretion."

*Id.*, 323 Md. at 212, 592 A.2d at 504.

Judge McAuliffe, speaking for the Court in *Tally v. Tally,* 317 Md. 428, 436, 564 A.2d 777, 781 (1989), noted that an evidentiary finding of "bad faith" or "lack of substantial justification" is required to be made, and supported, by the trial court:

The justification for this requirement lies not only in the clear language of the rule, but also in the logic that before such an extraordinary sanction is imposed there should be evidence that there has been a clear focus upon the criteria justifying it and a specific finding that these criteria have been met. Moreover, some brief exposition of the facts upon which the finding is based and an articulation of the particular finding involved are necessary for subsequent review.

Thus, we recognized the logic in ensuring that trial judges have the right focus when applying the rule and also the desirability of a trial court articulating the basis of its finding. So, while the earlier cases, *e.g. Newman v. Reilly,* 314 Md. 364, 380, 550 A.2d 959, 967 (1989); *Yamaner v. Orkin,* 313 Md. 508, 509, 545 A.2d 1345, 1345 (1988); *Legal Aid v. Bishop's Garth,* 75 Md.App. 214, 220, 540 A.2d 1175, 1179 (1988), are consistent in focusing on the specific finding requirement, I read *Tally* as also imposing a duty on the trial court to enumerate facts to support them. One basis for such a requirement is the danger of abuse identi-

fied in *Zdravkovich.* The rule's purpose provides another. *See Newman v. Reilly,* 314 Md. at 380, 550 A.2d at 967 ("Rule 1–341 is not intended to penalize a party and/or counsel for asserting a colorable claim or defense."); *Yamaner,* 313 Md. at 516, 545 A.2d at 1349 (same). *See also Needle v. White,* 81 Md.App. 463, 474, 568 A.2d 856, 861, *cert. denied,* 319 Md. 582, 573 A.2d 1338 (1990), where it is said:

> The objective of the rule is to fine-tune the judicial process by eliminating the abuses arising from the tendency of a few litigants and their counsel initiating or continuing litigation that is clearly without merit. The inherent danger in the process is that overzealous pursuit of the objective may result in what the Court, in *Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 254 (2nd Cir.1985), described as "stifling the enthusiasm or chilling the creativity that is the very lifeblood of the law."

In *Bishop's Garth,* 75 Md.App. at 224, 540 A.2d at 1180, the Court of Special Appeals opined that Rule 1–341 is not intended "as a weapon to force persons who have a questionable or innovative cause to abandon it because of a fear of the imposition of sanctions."

I believe that the facts found by the trial court do not support its bad faith or lack of substantial justification "findings" and that the claims Nilson filed against K. King Burnett did not lack substantial justification as a matter of law.[1] Therefore, I dissent.

---

1. I also believe that either the trial court used the wrong standard or was confused as to what standard to apply. With respect to the former, its statement of what it believed the applicable law to be, the references it made to its prior grant of the motions to dismiss, and the different results reached as to the Burnett and Harrisons motions for sanctions lead me to conclude that the court determined that, from the grant of Burnett's motion to dismiss, both "lack of substantial justification" and "bad faith" inexorably followed. As to the latter, I find persuasive the fact that the facts, on the basis of which the court found "bad faith", apply as much to the Harrisons as to Burnett, yet only Burnett's motion was granted.

## FACTUAL SUPPORT

To be sure, the trial court summarized some—what it characterized as "the major points"—of the facts. Although we may assume that any fact the court mentioned was a fact found, notwithstanding the rather lengthy hearing conducted on the issue, the trial court found precious few facts. At best, the court found the following facts:

(1) there was "a falling out" between Inlet Associates and the Harrisons, which resulted in protracted proceedings before the Worcester County Board of Zoning Appeals and other administrative bodies and the Worcester County Circuit Court.

(2) while the cases were pending either in the Circuit Court for Worcester County or on appeal, Nilson was hired "for the express purpose, that the court finds, to see if there was not some manner in which all the other ongoing litigation could be settled";

(3) Nilson's retainer had a bonus provision, which would be effective should the matter be settled within a relatively short period of time; thus, it was "obvious to the court ... time was of the essence". No settlement was effected within the applicable period of time, however;

(4) a draft copy of a complaint, "with some modifications", which was ultimately filed, was sent to Burnett. The court found that to be "an obvious act of intimidation to effect a settlement"; and

(5) the court granted Burnett's motion to dismiss, in its entirety, and the Harrisons' motion, in part.

The court made no additional findings of fact[2] when it separately considered the counts pled. Although it stated

---

**2.** The court did assert that Nilson "admitted in oral argument ... that there was no post-process abuse to substantiate the claim for abuse of process." To the extent that this is a factual finding, it is not supported by the record and, therefore, is clearly erroneous. The record reflects that whether Nilson did agree that the complaint did not allege anything additional to those filings, he, Nilson, at all times, maintained that the filing of the multiple appeals and the declaratory judgment action was, for purposes of the tort, post-process abuse.

that it found "that the claim against Mr. Burnett was instituted in bad faith and without substantial justification," this finding was no more than a conclusion; no facts to support it were supplied. Similarly, addressing the second count of the complaint, the court found no "colorable claim" and "no evidence or allegation of malice, nor was there any substantial justification for filing of that claim." Again, no supporting findings of fact were provided. Moreover, the conclusion that there was "no evidence or allegation of malice" was wrong. While the second count does not use the word, "malice," it alleged that the multiple actions were filed "without right or justifiable cause." In *Natural Design, Inc. v. Rouse Co.*, 302 Md. 47, 71, 485 A.2d 663, 675 (1984), we equated that phrase with "malice." In any event, the complaint in its entirety produces a strong inference of malice.

Thus, the court did not provide the "brief exposition of the facts" upon which the findings of bad faith and lack of substantial justification were based. Moreover, the facts it did find do not suggest, not to mention, demonstrate, that the court focused, as required, on *relevant* facts.

The facts the court summarized do not tell us very much about the appropriateness of the imposition of sanctions in this case. If they are relevant at all, they relate only, and then not very strongly, to the bad faith prong of the rule. None of the facts directly, or indirectly, addresses whether Nilson had substantial justification for filing the complaint. That Nilson was hired to find a way of settling the ongoing litigation between the parties, for example, does not necessarily indicate that he filed the litigation in "bad faith," and it certainly is not indicative that it was filed without substantial justification. Nor does the presence of a bonus provision in Nilson's retainer agreement mean that whatever he did pursuant to that agreement was undertaken in bad faith and/or without substantial justification, whether or not, as the court found, time was of the essence. It may be that sending a copy of the draft complaint to Burnett evidenced Nilson's intent to intimidate Burnett which, when

coupled with the filing of the complaint, may support an inference of bad faith; that fact does not, however, without more, provide any support for the assertion that the complaint was filed without justification.

The lack of substantial justification prong of the rule was addressed only when the trial court focused on the separate counts of the complaint. Even then, as pointed out, the trial court did little more than merely state the conclusion that Nilson acted without substantial justification.

Apparently, the majority has similar problems with the trial court's focus and findings. It relies only on the trial court's conclusions that Nilson acted in bad faith and without substantial justification, not the facts "used" by the trial court to support them. This is most apparent in the case of the bad faith conclusion.

Rather than focus on the *trial court's reasons*, the majority scoured the record for facts it believed supported the court's "bad faith" finding, facts neither explicitly, nor implicitly, relied on, as far as the record reveals, by the trial court.[3] Thus, the majority notes that Nilson added Burnett as a defendant in the draft complaint he received from Inlet's former lawyer and asserts that it is a fact from which the court *"could* conclude ... that Nilson had no reason to believe that Burnett had the intent to maliciously interfere with prospective business advantage or intent to utilize legal process in an improper manner or for a result not contemplated by law." Similarly, the Harrisons' suc-

---

**3.** The standard of appellate review of a trial court's bad faith or lack of substantial justification "finding", applied uniformly by the Court of Special Appeals, *e.g., Needle v. White,* 81 Md.App. 463, 470, 568 A.2d 856, 859, *cert. denied,* 319 Md. 582, 573 A.2d 1338 (1990), and adopted by this Court today, is whether it is clearly erroneous. That standard is a deferential one, which may tend to encourage greater use of sanctions. It is interesting that we adopt this standard so soon after we commented, in *Zdravkovich v. Bell Atl–Tricon Leasing,* 323 Md. 200, 212, 592 A.2d 498, 504 (1991), that "[t]he deterrent purpose of Rule 1–341 should be re-emphasized because, in too many cases, the pleadings that evidence the most bad faith and the least justification are motions requesting costs and attorney's fees."

cessful appeal of the adverse decision rendered by the circuit court in the administrative appeals and the trial court's finding that the draft complaint naming Burnett as a defendant was mailed to Burnett as an act of intimidation are cited as presenting a permissible inference that Burnett was joined as a defendant for an improper purpose: to force the Harrisons to abandon their legal challenges to the Inlet project. The majority also relies on a letter to Nilson from Inlet's prior counsel, in which it was suggested that, "if the Harrisons would simply drop their lawsuits in the Circuit Court for Worcester County, the entire matter would go away," to support the inference of bad faith. As indicated, as far as the record reveals, none of these reasons was relied upon by the trial court.

The majority does not even explain its rationale for adopting the court's finding with respect to the lack of substantial justification prong. It merely rejects Nilson's argument that the court applied the wrong standard on the basis that it takes certain of the trial court's statements out of context and, apparently, presumes that "the trial judge knew and properly applied the law."

In point of fact, consequently, the majority opinion is strong evidence that the trial court failed to provide its rationale for finding bad faith and lack of substantial justification, as *Tally* requires,[4] necessitating reversal and remand for further proceedings.

---

**4.** *Ordinarily*, trial judges are not required to set out the details of their thought processes, *but see Smith v. State*, 306 Md. 1, 11–12, 506 A.2d 1165, 1170 (1986); it is enough that there is, in the record, evidence to support the result reached. The award of attorney's fees and costs for the bringing of frivolous or bad faith actions is an extraordinary sanction, *Tally v. Tally*, 317 Md. 428, 436, 564 A.2d 777, 781 (1989), as well as a deviation from the usual rule that each party pays his or her own attorney's fees. Moreover, because the sanction has been determined not to be intended to stifle creativity or innovation, it must be judiciously, perhaps, even sparingly, used. Consequently, I believe this to be an appropriate instance in which to require more of the trial court—to burden it, if necessary—to ensure that it has appropriately awarded sanctions.

### COLORABLE CLAIMS

The majority opinion focuses most heavily on the bad faith prong of the rule. Implicit in the majority's position is that use of the word, "or", permits that prong to stand on its own. From this premise, it follows that, even if one finding, in this case, the substantial justification prong, is deficient, affirmance is nevertheless justified by the other, *i.e.*, the bad faith prong. I am not convinced.

Maryland cases that have addressed Rule 1–341, and its purpose, make clear that the rule is not intended to chill the exercise of rights by one with a "colorable claim." *See Newman v. Reilly,* 314 Md. at 380, 550 A.2d at 957 ("Rule 1–341 is not intended to penalize a party and/or counsel for asserting a colorable claim or defense."); *Zdravkovich,* 323 Md. at 212, 592 A.2d at 504 (Rule 1–341 is not intended to stifle enthusiasm or chill the creativity that is the very lifeblood of the law.); *Needle v. White,* 81 Md.App. at 470, 568 A.2d at 860; *Bishop's Garth,* 75 Md.App. at 224, 540 A.2d at 1180.

The cases do recognize that the rule's use of the word "or" indicates that its prongs are independent. Thus, in *Newman v. Reilly,* 314 Md. at 380, 550 A.2d at 967, we said: "In order to impose sanctions [Rule 1–341] requires the trial judge to find one or both of two predicates: bad faith or lack of substantial justification." *See also Zdravkovich,* 323 Md. at 210, 592 A.2d at 503; *Bishop's Garth,* 75 Md.App. at 220, 540 A.2d at 1178. This does not mean, however, that a litigant with a "colorable claim" *and* an improper motive will, or should, be subject to Rule 1–341 sanctions. That issue was not presented and, therefore, not ruled upon. It was addressed in *Needle* and *Bishop's Garth.*

In *Needle,* the issue was whether the plaintiff's action for malicious prosecution and intentional infliction of emotional distress against her former employer was filed in bad faith and/or without substantial justification. The plaintiff had previously been acquitted of embezzlement and her civil

complaint had survived motions for summary judgment and for judgment. Following a jury verdict in favor of the former employer, the trial court assessed sanctions, pursuant to Rule 1–341, against the plaintiff and her counsel. The Court of Special Appeals reversed, noting the rule's purpose to eliminate the initiation or continuance of litigation that is clearly without merit. *Id.,* 81 Md.App. at 470, 568 A.2d at 860. It concluded that before sanctions may be imposed, there must be "clear evidence that the action is *entirely without color and taken for other improper purposes amounting to bad faith.*" (Emphasis added) *Id.,* 81 Md.App. at 474, 568 A.2d at 861.

A similar sentiment was expressed in *Bishop's Garth.* There, Bishop's Garth sued clients of the Legal Aid Bureau in the District Court, alleging breach of their lease. On advice of counsel, the defendants prayed a jury trial, thereby removing the case to the circuit court. Following a two day jury trial, only 63 minutes of which involved the presentation of the defense, the jury, returned a verdict in favor of Bishop's Garth after only 27 minutes of deliberation. The defendants appeal was dismissed for failure timely to order the trial transcript. Bishop's Garth's Rule 1–341 motion was granted by the trial court, which found as a fact both that the jury trial and the subsequent ill-fated appeal were taken "for purposes of delay, in bad faith, and without substantial justification [and] that although a jury trial was requested for the purpose of obtaining 'additional discovery,' as well as to decide the factual issues, the request was made in order to delay the trial and to intimidate Bishop's Garth into dismissing its suit against [the defendants]." 75 Md.App. at 221, 540 A.2d at 1178.[5]

---

**5.** Like Rule 1–341, Federal Rules of Civil Procedure Rule 11, the federal counterpart, authorizes federal district courts to impose sanctions upon attorneys, and their clients, who file pleadings not reasonably well grounded in fact or law and for any improper purpose. It provides, in pertinent part:

> The signature of an attorney or a party constitutes a certificate by the signer that the signer has read the pleading, motion, or other

▬▬▬▬▬▬▬▬▬

The Court of Special Appeals reversed. Relying on the Comment to Rule 3.1 of the Maryland Lawyers' Rules of Professional Conduct,[6] it rejected the argument that the purpose of the jury trial prayer was to delay the trial. *Id.*, 540 A.2d at 1199; *See also Miller v. Miller*, 70 Md.App. 1, 12, 519 A.2d 1298, 1303 (1987) (Where dilatory conduct based on justifiable grounds, Rule 1–341 does not apply.). The court then cautioned against using hindsight, stressing

---

paper; and that to the best of the signer's knowledge, information and belief formed after reasonable inquiry it is well grounded in fact ... and that it is not interposed for any improper purpose such as to harass or to cause unnecessary delay or needless increase in the cost of litigation....

Rather than "bad faith" and "lack of substantial justification", Rule 11 speaks in terms of pleadings, motions, or other papers being "well grounded in fact" and not filed for "any improper purpose". Although the language is different, the two prongs of the rules are quite similar. Interpreting Rule 11, the Fifth and Ninth Circuits have held "that the filing of a complaint that is well-grounded in fact and warranted by existing law, cannot as a matter of law constitute harassment for the purposes of Rule 11," *Sheets v. Yamaha Motor Corp., U.S.A.*, 891 F.2d 533, 538 (5th Cir.1990); *Jennings v. Joshua Independent School District*, 877 F.2d 313, 320 (5th Cir.1989); *Aetna Life Insurance Company v. Alla Medical Services, Inc.*, 855 F.2d 1470, 1476 (9th Cir.1988); *Greenberg v. Sala*, 822 F.2d 882, 885 (9th Cir.1987); *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 832 (9th Cir.1986). These holdings are supportive of interpreting Rule 1–341 as insulating colorable complaints from the imposition of sanctions based only on the "bad faith" prong of the rule.

6. "The advocate has a duty to use legal procedure for the fullest benefit of the client's cause, but also a duty not to abuse legal procedure. The law, both procedural and substantive, establishes the limits within which an advocate may proceed. However the law is not always clear and never is static. Accordingly, in determining the proper scope of advocacy, account must be taken of the law's ambiguities and potential for change.

The filing of an action or defense or similar action taken for a client is not frivolous merely because the facts have not first been fully substantiated or because the lawyer expects to develop vital evidence only by discovery. Such action is not frivolous even though the lawyer believes that the client's position ultimately will not prevail. The action is frivolous, however, if the client desires to have the action taken primarily for the purpose of harassing or maliciously injuring a person or if the lawyer is unable either to make a good faith argument on the merits of the action taken or to support the action taken by a good faith argument for an extension, modification or reversal of existing law."

that it is the point of initiation, not the result, that is important. 75 Md.App. at 222, 540 A.2d at 1179. Moreover, stating that "Rule 1–341 represents a *limited* exception to the general rule that attorney's fees are not recoverable by one party from an opposing party [or counsel]," 75 Md.App. at 223, 540 A.2d at 1179, quoting *Legal Aid Bureau, Inc. v. Farmer,* 74 Md.App. 707, 722, 539 A.2d 1173, 1180 (1988) (Emphasis in original), it urged judicious use of the rule. *Id.,* 540 A.2d at 1180. Finally, the court asserted:

> Maryland Rule 1–341 is not, and never was intended, to be used as a weapon to force persons who have a questionable or innovative cause to abandon it because of a fear of the imposition of sanctions. Rule 1–341 sanctions are judicially guided missiles pointed at those who proceed in the courts without any colorable right to do so. *See, e.g., Blanton v. Equitable Bank, National Association,* [61 Md.App. 158, 485 A.2d 694]. No one who avails himself or herself of the right to seek redress in a Maryland court of law should be punished merely for exercising that right.

75 Md.App. at 224, 540 A.2d at 1180.

That the party sued ultimately prevails in litigation seldom, if ever, justifies imposing sanctions against the party who initiated it. *See Needle v. White,* 81 Md.App. at 478–79, 568 A.2d at 864.[7] *Bishop's Garth,* 75 Md.App. at 222, 540 A.2d at 1179. To avoid imposition of sanctions pursuant to Maryland Rule 1–341, a party need only initiate or maintain the action with "a reasonable basis for believing that [that] case will generate a factual issue for the trier of fact at trial." *Needle,* 81 Md.App. at 476, 568 A.2d at 863. *See also Kelley v. Dowell,* 81 Md.App. 338, 341, 567 A.2d 521, 522, *cert. denied,* 319 Md. 303, 572 A.2d 182 (1990).

---

**7.** It is true that Nilson filed the complaint before the circuit court ruled and, therefore, did not rely on that court's ruling. Nevertheless, because it is the reasonableness of Nilson's conclusion, and, hence, the action he filed that renders the claim colorable or not, the circuit court's ruling indirectly confirmed Nilson's judgment.

Stated differently, a claim has substantial justification if it is "fairly debatable" or "within the realm of 'legitimate advocacy'", *Newman v. Reilly,* 314 Md. 364, 381, 550 A.2d 959, 967–68, quoting *Legal Aid Bureau, Inc. v. Farmer,* 74 Md.App. 707, 722, 539 A.2d 1173, 1180 (1988), or is "colorable." *Bishop's Garth,* 75 Md.App. at 221–22, 540 A.2d at 1179. Thus, whether a claim lacks substantial justification involves the assessment of the reasonableness of the legal position asserted. If it is "colorable", "within the realm of reasonable advocacy", "fairly debatable", or a good faith argument, either on the merits or in support of an extension, modification, or reversal of existing law, *see Dent v. Simmons,* 61 Md.App. 122, 127, 485 A.2d 270, 272 (1985), then sanctions are inappropriate. Thus, sanctions are inappropriate even where a party has misconceived the legal basis for the claim he or she makes. *Century I Condo v. Plaza Condo Joint Ven.,* 64 Md.App. 107, 119, 494 A.2d 713, 719 (1985).

The reasonableness of the legal position must be assessed at the point when the complaint is filed, not from the vantage point of hindsight. *See Bishop's Garth,* 75 Md. App. at 222, 540 A.2d at 1179; *Needle,* 81 Md.App. at 476, 568 A.2d at 802. Moreover, pursuit of Rule 1–341 sanctions differs from maintaining the underlying action in that the former is a collateral matter. *Farmer,* 74 Md.App. at 713, 539 A.2d at 1175. Consequently,

> the fact that a court rejects the proposition advanced by counsel and finds it to be without merit does not mean the proposition was advanced without substantial justification or in bad faith. There would be no inconsistency whatever in an appellate court affirming the judgment in the underlying action and reversing a Rule 1–341 judgment as an abuse of discretion.

*Id.*

Whether viewed from the perspective of existing law or an attempt to explore, expand or modify existing law, a claim lacks substantial justification "when there is no basis in law and/or in fact to support [the] claim," *Johnson v.*

*Baker,* 84 Md.App. 521, 529, 581 A.2d 48, 52 (1990), *cert. denied,* 322 Md. 131, 586 A.2d 13 (1991), or when it is frivolous. It is frivolous when its proponent cannot make either a good faith argument on the merits or in support of extending, modifying, or reversing existing law. *Id.,* at 529–30, 581 A.2d at 52, quoting *Bishop's Garth,* 75 Md.App. at 221–22, 540 A.2d at 1179 (quoting Comment, Maryland Lawyers' Rules of Professional Conduct Rule 3.1). *See also Black's Law Dictionary* 5th Ed. 601 (1979), which defines a frivolous pleading as one that is "clearly insufficient on its face and does not controvert the material points of the apposite pleading, and is presumably interposed for mere purposes of delay or to embarrass the opponent." Conversely, a "colorable" claim does not lack substantial justification.

A claim is "colorable" which is "apparently valid, but, which is in reality legally insufficient." *Black's Law Dictionary* at 248 (defining "color"). Where, then, consideration of the allegations underlying the claim and the arguments advanced in support of it reveals an apparent, or *prima facie,* cause of action, the claim withstands scrutiny under the substantial justification prong of Rule 1–341.

The test of substantial justification cannot have a high threshold. Indeed, reference to the definition of "lack of substantial justification" makes clear that all that is required is "some" basis in law and/or fact. *See Johnson v. Baker,* 84 Md.App. at 529, 581 A.2d at 52. The question is how much is "some"? This can only be answered in relation to the purpose of Rule 1–341. The more an unsuccessful litigant is required to show to justify filing or maintaining his or her claim, the greater the chilling effect and the more reluctant that litigant will be to file any but the clearest actions. Similarly, the easier it is to assess the losing party with attorneys' fees, the more the usual rule—that each party pays his or own counsel fees—is undermined.

Moreover, whether a claim has a basis in law and/or in fact is an issue separate and apart from the question

whether the complaint in which it is pled can survive motions to dismiss or for summary judgment. A claim dismissed for failure to state a claim is not automatically a basis for Rule 1–341 sanctions. That a party inartfully pleads a cause of action or the judge is not inclined to stray from existing law does not mean that the claim has "no" basis in law or fact, for purposes of rule 1–341 sanctions. Similarly, a claim is not *ipso facto* without basis in law or fact because it did not survive a motion for summary judgment; complaints alleging even the most well established torts, for want of sufficient factual allegations, often do not generate a factual dispute.

I conclude that it is more than the bare complaint or answer, or its disposition that must be considered when Rule 1–341 sanctions are sought. More critical than what motivated the party is what the party knew or should have known concerning the viability of the claim or defense.

In rendering its decision, the trial court paid little or no attention either to the allegations of the complaint or Nilson's testimony concerning why he filed it. Indeed, as I have pointed out, it is unclear on what the court focused. All we really know is that the court concluded that the complaint was filed both in bad faith and without substantial justification.

Although as a backdrop for the instant litigation, the majority opinion contains some of the facts and the circumstances surrounding the initiation of the Inlet/Holt's Landing Project, the Nilson complaint alleges them in greater detail.

The complaint alleged that the Harrisons and Inlet contemplated jointly developing and constructing a marina in front of their adjoining properties. That joint venture never came to fruition because the Harrisons lost litigation contesting a height variance necessary to the construction of a high rise project they contemplated. The Harrisons asked their architect, D'Aleo, who was also a principal in Inlet, to forego some of his fees, threatening that the joint

venture would continue only if this were done. When D'Aleo refused and subsequently sued the Harrisons, recovering the fees, "the Harrisons mounted an assault on Inlet's project, which culminated in the filing of multiple actions before the Board of Zoning Appeals ("BZA") of Ocean City and in the Circuit Court for Worcester County."

Among the actions taken by the Harrisons, according to the complaint, was to petition the City Council to revoke the City's "consent to transfer certain property to Inlet necessary for completion of its project as it was then planned." Ultimately, they filed suit in the Circuit Court for Worcester County and obtained an injunction enjoining the transfer. That judgment was affirmed on appeal. *Inlet Associates v. Assateague House,* 313 Md. 413, 545 A.2d 1296 (1988).

During the trial of *Assateague House,* with Burnett as counsel, the Harrisons argued that, for Inlet to downscale its project and proceed without the disputed city property, would require only a "minor" change to Inlet's plans, which had already been approved.[8] This position was taken to rebut testimony by Inlet that it would not downscale the project for fear that such a change in the plans would be deemed "major." Were that the case, Inlet maintained, it would have had to start the process all over again, this time in the face of new, and unfavorable, laws, which would make the project economically unfeasible.

While the *Assateague House* case was pending on appeal, Inlet revised its plans, downscaling the project as suggested. Although the Zoning Administrator, characterizing the change as a "minor" one, recommended approval of the downscaled project, according to the complaint:

> The Harrisons, almost immediately, launched a formal objection to approval of the revised plan, now calling it a "major change," and insisting that Inlet should be forced to proceed under the new, less favorable, height and

---

8. Burnett elicited testimony to that effect from the Zoning Administrator, whom he called as a witness for the Harrisons.

density laws. Harrison Inn Inlet, Inc. and Harrison Inn Sixty-six, Inc., at the direction of the Harrisons and with the advice, counsel and encouragement of defendant Burnett, filed two separate actions before the BZA ... attacking the approval of the revised plans. In the process, the Harrisons and their counsel took a position wholly inconsistent with that taken by them in the litigation pending in the Court of Appeals. Indeed, at the same time they were arguing to the BZA that Inlet's revised plan was a "major change", they filed a brief with the Maryland Court of Appeals arguing, that, "... Inlet, grandfathered under the old density rules, could build the same project entirely on its own property ..." and insisting that there would be no hardship on Inlet if it were required to do so.

The Board of Zoning Appeals ("BZA") ruled against the Harrisons, who, consequently, appealed to the circuit court. Still counseled by Burnett, the Harrisons filed additional, and separate, appeals of the oral and written opinion of BZA.[9] The complaint alleged that one of the appeals was taken for the "wholly improper purpose of attempting to achieve a stay in the appeals pending before the circuit court, without posting a bond in those appeals." After filing the several administrative appeals, the Harrisons, through Burnett, filed yet another lawsuit against Inlet, this one "seeking declaratory and injunctive relief based on the same facts underlying their five BZA appeals concurrently pending in the circuit court."

Finally the complaint alleged that Burnett was an active impediment to resolution of the dispute between Inlet and the Harrisons. Specifically, it stated:

When recently advised of the claims set forth herein, defendant Burnett wrote that "I do not believe that I should represent my client in any settlement negotiations" and, quoting a conflict of interest, that "I cannot

---

**9.** One of the appeals to the BZA was from the Zoning Administrator's signature to Inlet's plan.

participate in any settlement negotiations or even advise my client as to whether there should or should not be any such negotiations...."

In my view, it is significant that the Nilson complaint alleged the filing of multiple appeals,[10] based, essentially, on the same conduct and, certainly, with the same aim—avoiding the approval and completion of a project the Harrisons opposed. Thus, whether or not the complaint used the word "malice", to describe Burnett's actions, as we have seen, Nilson alleged that the multiple appeals and the declaratory judgment action were initiated "without right or justifiable cause". In any event, the totality of the circumstances alleged presented a reasonable basis for Nilson's belief that a claim for malicious interference with prospective business advantage and/or abuse or process claim lay against Burnett.[11]

---

**10.** The majority points out that the five appeals and the separate action filed by the Harrisons were consolidated at the Harrisons' request. This, it suggests, ameliorates the impact of the separate filings. It may be commendable that the separate actions were, after the fact, consolidated, but that should not deflect attention from the fact that they were separately filed or from consideration of the effect and purpose of those filings. When the Harrisons filed each separate administrative appeal, Inlet was called upon to decide whether to participate and, if so, in what manner. See Maryland Rule B9. Of course, the declaratory judgment action required that Inlet, under pain of default, file an answer.

**11.** Burnett's argument that count 1 of the complaint lacked substantial justification proceeds on the premise that no process issued against Inlet when appeals were noted from the Board of Zoning Appeals' decisions. He also argues that the complaint did not allege any post-process abuse. Of significance to Burnett is the narrowness of the term "process" as used in the tort. *See* Burnett's brief at 21–22. Whether or not the term "process" as used in connection with the tort of abuse of process is narrowly interpreted in Maryland, there are cases from other states, which indicate that a broader interpretation of the term is appropriate. *See e.g. Nienstedt v. Wetzel,* 133 Ariz. 348, 651 P.2d 876 (1982); *Barquis v. Merchants Collection Association of Oakland,* 7 Cal.3d 94, 101 Cal.Rptr. 745, 496 P.2d 817 (1972). *See also* Harper, James & Gray, The Law of Torts, § 4.9 at 495–96, n. 49 (1986). Accordingly, since an attempt to modify or expand existing law is not intended to be stifled by Rule 1–341, the court need not and, indeed, should not have found lack of substantial justification solely

A permissible inference to be drawn from the filing of multiple appeals based on the same subject and acts is that they were filed for an improper purpose—*inter alia*, to harass, as alleged in paragraph 23 of the complaint, and to cloud Inlet's title, as alleged in paragraph 27. And, because counsel is not obliged to follow blindly the directions of his or her clients and file lawsuits, the only effect of which is to harass or otherwise injure the defendants, a point I presume the majority does not dispute, that inference applies no less to the lawyer than to the client. Indeed, because Rule 1–341 contemplates sanctioning lawyers who violate it, filing an action against a lawyer who files appeals or complaints to harass is consistent both with its letter and spirit.

There is more in this case, however. In addition to the multiplicity of litigation, counsel made conflicting *legal*[12] arguments, at the same time, *albeit* before different tribunals. Those arguments are appropriately attributable to Burnett. This is an additional factual circumstance which permits malice to be inferred as to Burnett.

Furthermore, the circuit court judge, before whom the various administrative appeals and the declaratory judgment action were consolidated, found merit in none of the actions. He had little difficulty framing and disposing of the issues presented. Significantly, he found that the downscaling of the Inlet project was, as Burnett originally

---

on the basis that Maryland law does not now explicitly recognize the tort with the contours Nilson sought to achieve.

As to Count 2, the trial court's determination was presumably based upon Nilson's failure to allege or present evidence as to, "malice." As already pointed out, the complaint may well have alleged, *albeit* not as explicitly as Burnett would like, "malice", and, in any event, the totality of the allegations presented an inference of "malice". That, in my view, is a sufficient rebuttal to the court's finding.

In any event, only if both of the counts fail for lack of substantial justification would Burnett be entitled to sanctions; it is enough that one, not both, of the counts pass muster.

**12.** Whether an amendment to project plans is "major" or "minor" is primarily a legal, rather than factual, issue.

argued and Inlet alleged, a "minor" modification to the project plans. This supports, *albeit,* indirectly, Inlet's argument that its claim against Burnett was colorable.

The majority, the Harrisons, and Burnett remind us that the circuit court judgment was reversed by the Court of Special Appeals. It is relevant to note that that decision was based on the ground that a special height exception granted Inlet in 1985 to accommodate the project had lapsed, by operation of law, before Inlet obtained an extension. The issues at the heart of Inlet's abuse of process and malicious interference action were not reached.

The trial court failed properly to focus on the issue presented in this case. It did not apply the appropriate test in determining whether Inlet had substantial justification for filing the complaint; the court never examined the real issue before it—whether, when filed, the claim was colorable, within the realm of legitimate advocacy. Had it done so, I believe it would have been compelled to conclude that a colorable claim was presented, and, therefore, imposition of sanctions impermissible. Our cases agree.

In *Newman v. Reilly,* we reversed a judgment of the Court of Special Appeals which affirmed sanctions imposed against the plaintiff for filing an action to nullify a health claims arbitration award without substantial justification. There, the plaintiff brought an action against one of the physicians who certified the need for the plaintiff's involuntary commitment, alleging that physician's failure to follow the statutory procedure for involuntary commitment. Specifically he contended that, because the physician spoke to him only on the phone, he did not "personally examine" him as the statute required. Despite not having an expert to testify that failure personally to examine him was a violation of the applicable standard of care, the plaintiff, who lost in arbitration, continued to make that assertion in the circuit court. That court determined that the plaintiff's position "was unsupported by any plausible legal argument." 314 Md. at 380, 550 A.2d at 967. Without deciding the meaning of the term "personal examination", as used in

the statute, we held that a theory which would require a doctor to examine a patient who is physically present is a "legitimate one." *Id.*, 314 Md. at 381, 550 A.2d at 968.

The defendant's justification for filing a second motion for summary judgment, the court having denied the first one because there was a factual dispute, was at issue in *Yamaner v. Orkin.* The second motion did not clearly disclose how the grounds asserted differed from those asserted in the first. Upon being assessed counsel fees for filing the second summary judgment motion without substantial justification, the defendant filed a motion to reconsider the denial of the motion for summary judgment and the imposition of sanctions. In it, he averred that the second motion was based on additional factual material developed at the arbitration hearing, including testimony that the plaintiff's expert, having isolated the time of injury to a period when the plaintiff was not under the defendant's care, had changed his mind as to the cause of the plaintiff's injury. The motion also noted the expiration of the discovery deadline without the plaintiff naming any additional expert. We were of the opinion that "Prior to Yamaner's motion for reconsideration of the sanction, the justification for Yamaner's September 1986 summary judgment motion might not have been made as clear to Judge McKenna as it could have been, but substantial justification was plainly spelled out in that reconsideration motion and its supporting exhibits." 313 Md. at 516, 545 A.2d at 1349. We explained (313 Md. at 516–17, 545 A.2d at 1349):

Here Yamaner had two strings to his bow. His legal argument was that *res ipsa loquitur* does not apply in medical malpractice cases. That argument was reinforced by the discovery deadline which passed after Judge Latham's ruling. Arguably there was no opinion of Dr. Mayle implicating Yamaner and Orkin had not produced any other expert. From the standpoint of evidentiary material submitted in the record, the facts on the issue of when the injury occurred had also changed. The additional use of Dr. Mayle's arbitration hearing testimo-

ny arguably eliminated the generality in testimony relied upon by Judge Latham and isolated the time of injury to a period when Yamaner had no responsibility for the positioning of the patient.

The cases decided by the Court of Special Appeals, in which the award of attorney's fees for bringing an action without substantial justification have been upheld are consistent. Also, they are instructive because, from them, we know the adjudicated parameters of that concept. In *Allnut v. Comptroller*, 77 Md.App. 424, 550 A.2d 728 (1988), for example, the issue was the validity of Maryland's personal income tax and, due to the dependency of the Maryland scheme on the federal income tax structure, necessarily, "either the constitutionality of former § 205 of the revised statutes of the United States or the proper ratification of the 16th Amendment of the United States Constitution." *Id.*, 77 Md.App. at 426, 550 A.2d at 728. "Considering the plethora of recent federal cases, all rejecting the very argument which appellants have asserted and a number of Maryland cases ... explaining the sources of Maryland's taxing power," the court found that Allnut's appeal of the circuit court's dismissal of the action was taken without substantial justification *Id.*, 73 Md.App. at 430, 550 A.2d at 731.

*Johnson v. Baker* is another informative case. There, Johnson sued Baker for breach of contract and fraud. Baker moved to dismiss and Johnson countered by amending his complaint to render that motion moot. When Baker moved to dismiss the amended complaint, Johnson amended that complaint. This pattern continued through the third amended complaint; however, the court granted Baker's motion to dismiss the second amended complaint, awarding counsel fees to Baker's attorney and Johnson appealed. The Court of Special Appeals affirmed and this Court denied the requested writ of certiorari. Baker filed a motion seeking sanctions pursuant to Rule 1–341. Granting the motion, the hearing court concluded that Johnson "ignored precedent" and was unable to give Judge Heise any support for his [Johnson's] proposition." 84 Md.App. at

526, 581 A.2d at 51. In affirming, the Court of Special Appeals drew a distinction between the initiation of the litigation and the prosecution of the appeal, noting that, in that case, Johnson was sanctioned for pursuing the appeal when "it had become patently apparent that he had no colorable claim." 84 Md.App. at 531, 581 A.2d at 51. As to the lack of substance, the court said:

> At the trial level, Johnson's theory of his case was that a third party may sue an attorney for advice which the attorney has given a client on a matter in which the attorney has no personal interest. When pressed by the judge, Johnson could offer no Maryland case law, nor case law from any other jurisdiction, to support that theory. The judge considered Johnson's proposition a "fundamentally erratical change in the law" which would radically change the nature of attorney-client relationships and create a litigation explosion. The judge concluded that Johnson's claim was "frivolous ... [and without] any basis in law or in fact based on [Johnson's] allegations."

> Our prior opinion on this case was part of the record before the circuit court judge at the sanctions hearing. In it, we explained why Johnson had no cause of action and affirmed the circuit court's dismissal of Johnson's complaint and award of attorney's fees to Blumenthal. In this appeal, Johnson still has not provided us with a viable legal theory or precedent that would justify his pursuit of his prior appeal to us. He begins by claiming that he has a "colorable claim," which clearly has no basis in fact or in law, and then contends that he was entitled to continue the action because he had one appeal as of right. He appears to assume—erroneously—that an appeal of right can legitimize and give substance to an action that is otherwise without merit. (Footnote omitted)

84 Md.App. at 530, 581 A.2d at 52–53.

In *Blanton v. Equitable Bank, Nat'l Ass'n,* 61 Md.App. 158, 485 A.2d 694 (1985), the defendant appealed the denial

of his motion for continuance. A motion to dismiss the appeal, and seeking counsel fees, having been filed by the plaintiff, the Court of Special Appeals focused on whether there was justification for the appeal and concluded that there was not. In reaching that conclusion, the court noted that appeal from a continuance is neither an enumerated exception to the final judgment rule, 61 Md.App. at 163, 485 A.2d at 697, citing Maryland Courts and Jud.Proc.Code Ann. § 12–303 and *Smiley v. Atkinson,* 12 Md.App. 543, 280 A.2d 277 (1971), *aff'd,* 265 Md. 129, 287 A.2d 770 (1972), nor appealable under the collateral order doctrine. 61 Md. App. at 163–165, 485 A.2d at 699–98. This determination was made as a matter of law.

An argument that counsel fees cannot be awarded pursuant to Rule 1–341 to one who is not a member of the bar was considered specious in *Kirsner v. Edelmann,* 65 Md. App. 185, 197, 499 A.2d 1313, 1319 (1985). That court likewise rejected an argument that advice of counsel supplied substantial justification where it had been previously considered and rejected, *albeit* in dicta, on a prior appeal. *Id.,* 499 A.2d at 1319.

The Rule 1–341 issue in *Century I Condo* was multi-faceted. As to the claim for fees incurred in the trial court, which the trial judge denied, the Court of Special Appeals refused to hold, as a matter of law, that the plaintiff's action was brought or maintained without substantial justification even though, in filing and maintaining it, the plaintiffs "may have been skating on very thin ice." 64 Md.App. at 119, 494 A.2d at 719. It held otherwise as to part of the costs incurred on appeal—because the decision in a pending appeal decided before oral argument in that case, was res judicata as to that case. 64 Md.App. at 121, 494 A.2d at 720.

What comes through loud and clear is that it is where the law is quite clear and the party initiating or maintaining the action is aware, or should be aware, of that fact that lack of substantial justification is found. To uphold a trial court's determination under any other circumstance is to place a

significant damper on litigants and, hence, to retard the development of the law. That is not the purpose of Rule 1–341.

I would reverse.