## WALKER v. AMERICAN SECURITY & TRUST COMPANY OF WASHINGTON, D. C., ET AL.

[No. 76, September Term, 1964.]

*Decided December 7, 1964.*

The cause was argued before HENDERSON, C. J., and HAMMOND, HORNEY, SYBERT and OPPENHEIMER, JJ.

*Joseph A. McMenamin* for appellant.

*Roberts B. Owen,* with whom were *Richard S. Arnold* and *David E. Betts* on the brief, for appellees.

HORNEY, J., delivered the opinion of the Court.

In this action for malicious use of process and abuse of civil process, the only question on appeal is whether or not the lower court erred in granting the motion of the defendants (American Security and Trust Company of Washington, D. C., and Arthur A. Birney) for summary judgment as a matter of law against the plaintiff (Aldace F. Walker) on the ground that there was no genuine dispute as to any material fact.

On the petition of the plaintiff and his sister, the United States District Court for the District of Columbia, in April 1962, appointed the trust company as conservator of the estate and person of their mother (Alonsita Walker). The conservator, after accepting the appointment, engaged the services of the other defendant as counsel in connection with its duties under the conservatorship.

Less than a month later, the plaintiff, at the request of his mother, but without the knowledge or approval of the conservator, took her from her apartment in Washington, where she had been receiving twenty-four hour nursing care, to see a medical specialist in Baltimore. From there, apparently on the advice of the physician, they proceeded first to a guest house in Easton and then to Webley, the home of the mother near McDaniel in Talbot County. At all times the mother was under the care and treatment of a physician recommended by the specialist.

Subsequently, when the daughter learned that her mother had left Washington, she informed counsel of that fact and he, in turn, notified the conservator that the whereabouts of its ward was unknown. On inquiring of a judge of the district court as to the obligations of the trust company as conservator under the circumstances, counsel was advised to institute a habeas corpus proceeding on behalf of the conservator to regain custody as soon as the ward was located. When, a few days later, counsel learned that the ward and her son were at Webley, he instructed an Easton attorney to prepare a petition for a writ of habeas

corpus. The next day counsel for the conservator, along with several officials of the trust company, went to Easton and conferred with the chief judge of the Circuit Court for Talbot County.

In addition to the hereinbefore related facts, the petition for the writ alleged that the son had secretly taken his mother out of Washington and that the ward was unlawfully detained by the son to her "detriment, health and welfare." The circuit court ordered issuance of the writ as prayed and directed the sheriff to serve it on the son and cause him to immediately appear in court with his mother, provided qualified medical personnel accompany the sheriff and approve her removal as not being injurious to health. The writ issued by the clerk of court commanded the sheriff, in terms comparable to those contained in the order of court, to "have the body of [the mother] detained by and in the custody of [the son] * * * under a safe and secure conduct, * * * together with the * * * cause of her being taken and detained * * *," before the issuing court forthwith. The writ further commanded the sheriff to serve the writ on the son and cause him to appear immediately before the court together with his mother, but the sheriff was not thereby commanded to arrest the son. The sheriff proceeded to Webley and served the writ on the son. At the same time, the county health officer examined the mother to ascertain whether it was feasible for her to travel. After waiting until their attorney arrived at Webley, the son and his mother went to Easton in their own automobile unaccompanied by the sheriff and appeared before the judges of the court as directed by the writ.

At the hearing, the circuit court determined that the mother should remain at Webley for the time being to afford the parties an opportunity to try to reconcile their differences amicably, but no determination was made as to whether custody of the mother was rightfully or wrongfully in the son. Subsequently, the conservator, desirous of having the custody question decided, requested the court to hold a further hearing. However, before this was done, the trust company dismissed the habeas corpus proceeding and paid the costs. The son took no part in securing the dismissal. Between the time of the initial hearing and the dismissal of the proceedings, the conservator employed

a nurse to remain with its ward, and, ascertaining that she had adequate care, its counsel advised the conservator that the ward should remain at Webley until the following winter. Permission to allow the ward to remain on the farm was requested and granted by the district court. It was after permission was granted that the trust company filed the petition to dismiss the habeas corpus proceeding.

Approximately nine months after the dismissal of the habeas corpus proceeding, and some five months after the death of his mother, the plaintiff filed suit in the Circuit Court for Montgomery County against the defendants (and an officer of the trust company who was not served and is not a party to this appeal) charging that by reason of the actions of the defendants, the plaintiff "was arrested by the sheriff * * * together with his mother * * * at which time they were both compelled, under arrest, in the custody and control of the sheriff, to travel from Webley to Easton * * * and there made to appear before the court at a hearing in open court." [1] It was also alleged that the defendants "were guilty of wanton and wilful misconduct in the premises; malicious prosecution; malicious abuse of civil process; and perpetration of false imprisonment." (The latter claim was apparently abandoned.)

The defendants filed separate general issue pleas (not guilty of the wrong alleged) and later filed jointly a motion for summary judgment in their favor, asserting that there was no genuine dispute as to a material fact and that they were entitled to judgment on the grounds that the habeas corpus proceeding "was instituted by an officer of a federal court on the advice of a judge thereof" and that "arrest is a necessary element of the cause of action and the plaintiff was not arrested."

Besides the exhibits of material papers attached to the motion—consisting of the petition for the writ of habeas corpus, the order of court directing the issuance of the writ, the writ of habeas corpus issued by the clerk of court, the petitions and orders thereon for a further hearing and the dismissal of the

---

1. Actually, out of consideration for the mother, the hearing was held in the office of the county commissioners on the first floor of the court house.

habeas corpus proceeding—and in addition to the supporting affidavit of counsel for the conservator setting forth in detail the facts and circumstances concerning the application for and service of the writ of habeas corpus, the motion for summary judgment was accompanied by three other supporting affidavits. The affidavit of the sheriff, besides relating the circumstances surrounding the service of the writ in accordance with oral instructions he had received from the clerk of court, certified that he never laid a hand on the plaintiff or indicated in any way that he was placing him under any physical restraint, that he did not compel the plaintiff to come to court with him, and that he did not restrain him of his liberty in any manner. The affidavit of the county health officer, among other things, certified that the plaintiff was not physically restrained by the sheriff or by anyone else and that he did not appear to be under arrest. Likewise, the clerk of court, who had instructed the sheriff not to arrest the son or take either him or his mother into physical custody or to otherwise restrain them in any manner, certified that while the son was in court he was not restrained or ever informed that he was under arrest or otherwise restrained.

Along with his answer to the motion for summary judgment, the plaintiff filed an opposing affidavit claiming that there was a genuine dispute as to whether an arrest had taken place when he was served with the writ of habeas corpus in that the sheriff in reading the writ had told him he was under arrest and that he had to take him with his mother before the court immediately. The plaintiff also contended that a dispute existed as to whether his mother was actually restrained by him in an illegal and involuntary manner so as to warrant the issuance of the writ. But he did not deny (as was alleged in the petition for the writ of habeas corpus) that he had secretly taken his mother out of Washington without the knowledge or approval of the conservator.

At the hearing on the motion, the plaintiff, besides claiming there were factual disputes as to whether he was arrested and as to whether he had illegally restrained his mother, further contended that the presence of malice and the absence of probable cause in and for the institution of the habeas corpus proceeding present questions for the trier of facts to determine.

Maryland Rule 610 d 1 requires the granting of a motion for summary judgment when, as here, the pleadings, exhibits and affidavits indicate that there was no genuine dispute as to any material fact. Since this was the situation, the moving parties on the facts of this case were entitled to judgment as a matter of law. *Strickler Eng. Corp. v. Seminar,* 210 Md. 93, 122 A. 2d 563 (1956).

A tort action for abuse of process, on the one hand, and the tort actions for malicious prosecution and malicious use of process, on the other hand, are essentially different and independent actions. An action for abuse of process differs from actions for malicious prosecution and malicious use of process in that abuse of process is concerned with the improper use of criminal or civil process in a manner not contemplated by law after it has been issued, without the necessity of showing lack of probable cause or termination of the proceeding in favor of the plaintiff, while actions for malicious prosecution and malicious use of process are concerned with maliciously causing criminal or civil process to issue for its ostensible purpose, but without probable cause. 1 Am. Jur. 2d, *Abuse of Process,* § 2; Prosser, *Torts* (2nd ed.), Ch. 21, § 100, p. 667. See also *Bartlett v. Christhilf,* 69 Md. 219, 14 Atl. 518 (1888) ; *Zablonsky v. Perkins,* 230 Md. 365, 187 A. 2d 314 (1963) ; *Capitol Electric Co. v. Cristaldi,* 157 F. Supp. 646 (D. Md. 1958). Actions for malicious prosecution and malicious use of process have the same essential elements and are often referred to as being essentially synonymous, with most of the cases referring to malicious prosecution as arising out of a criminal proceeding and malicious use of process as arising out of a civil proceeding.

In the case at bar, the issuance of the writ of habeas corpus was a proper means of procuring the personal presence before the court of the son and his mother in order to inquire into the legality of her detention. Not being limited to questions involving confinement for crime, the writ may properly be invoked to test the propriety of any form of restraint where wrongful detention is complained of. 2 Poe, *Pleading and Practice* (5th ed.), § 714, *et seq.* When a writ of habeas corpus is issued, the party to whom it is directed is required to produce the party detained and it is for the court to determine whether

the cause for detention is sufficient. *State v. Glenn,* 54 Md. 572, 607 (1880). See also *Olewiler v. Brady,* 185 Md. 341, 44 A. 2d 807 (1945), as to habeas corpus generally. While the writ is normally used to liberate persons kept in involuntary or illegal restraint, it is nevertheless used when there is a withholding from lawful custody without the restraint being involuntary. The theory is that detention which violates lawful custody is equivalent to illegal restraint. See *Burns v. Bines,* 189 Md. 157, 161, 55 A. 2d 487 (1947). Here, where the conservator had legal custody of the plaintiff's mother, her removal from Washington to Talbot County absent the consent or approval of the conservator was sufficient to justify resorting to the writ of habeas corpus to determine the custodial rights of the respective parties. As the effort of the conservator to regain control of its ward under the writ was proper, no action would lie for malicious abuse of process.

The granting of the motion insofar as malicious use of civil process was concerned was also proper. Granted there was room for controversy as to whether or not the plaintiff was arrested, there is no dispute as to a material fact. Even if it is assumed for the purposes of this case that there was an arrest, the defendants would not be responsible for it. An arrest of the plaintiff was not authorized under the writ, and, in any event, the sheriff was not acting as the agent of the defendants. The propriety of granting the motion for summary judgment must therefore turn on whether the execution of the writ by "carrying" the person charged with detention (see Code, 1957, Art. 42, § 10, now repealed) or by "producing" the person charged with confinement or restraint (see Rule Z47 b) before the issuing judges was a malicious use of civil process. We think it was not. In *Owens v. Graetzel,* 149 Md. 689, 695, 132 Atl. 265 (1926), an action for malicious use of process (but termed therein an action for malicious prosecution), it was said that "there must co-exist and be shown: (1) the institution of the civil proceedings, (2) without probable cause, (3) with malice; (4) that the proceedings have terminated and in the plaintiff's favor, and (5) that damages were inflicted upon the plaintiff," in order to maintain an action for malicious use of process. See also *Shamberger v. Dessel,* 236 Md. 318, 204 A. 2d 68 (1964),

another action for malicious use of process (though termed malicious prosecution) since it arose out of a civil proceeding. And see *Jannenga v. Libernini,* 222 Md. 469, 160 A. 2d 795 (1960); *Banks v. Montgomery Ward & Co.,* 212 Md. 31, 128 A. 2d 600 (1957); and *Safeway Stores v. Barrack,* 210 Md. 168, 122 A. 2d 457 (1956), where the same elements for maintaining actions for malicious prosecution arising out of criminal proceedings are set forth. As an examination of the record shows, none of the elements required to maintain an action such as this is presented by the facts and circumstances in this case.

Sufficient "probable cause" to justify the bringing of a civil action was defined in *North Point Construction Co. v. Sagner,* 185 Md. 200, 208, 44 A. 2d 441 (1945), as "a reasonable ground for belief in the existence of such state of facts as would warrant institution of the suit or proceeding complained of." In this case, where the plaintiff did not deny that he had taken his mother out of the jurisdiction of the district court and away from the lawful custody of the conservator without its approval or consent, we think the institution of the habeas corpus proceeding to regain custody of the ward, regardless of the nature of the presence of the mother at Webley, was both justified and proper. The pleadings, exhibits and affidavits clearly indicate that there was no malice in the institution of the proceeding and that there was probable cause for the issuance of the writ and the production of the plaintiff and his mother before the court. There must be both malice and a want of probable cause to maintain an action for malicious use of process. And, where probable cause exists, as it does here, malice, however strong, will not constitute a cause of action. *Kennedy v. Crouch,* 191 Md. 580, 62 A. 2d 582 (1948); *Medcalfe v. Brooklyn Life Ins. Co.,* 45 Md. 198 (1876).

Furthermore, since the habeas corpus proceeding was not dismissed by the conservator until after judicial permission had been granted to allow its ward to remain at Webley under the care and supervision of nurses employed by the conservator, it appears that the proceedings were not terminated in favor of the plaintiff.

Finally, an action for malicious use of process is not maintainable in the absence of proof that the plaintiff was damaged.

Mere annoyance and the expense of defending a civil action are not enough for that purpose. *North Point Construction Co. v. Sagner, supra,* and cases therein cited. There was here no showing of any damage to the plaintiff from having been *produced* by the sheriff before the court pursuant to Rule Z47 b, *supra,* other than that which would likely result in other similar habeas corpus proceedings.

All in all it is apparent that the granting of the motion for summary judgment was proper, and we so hold.

*Judgment affirmed; appellant to pay the costs.*