*Charles v. Charles*, No. 2342, September Term, 2023.  Opinion by Nazarian, J.

**TORT LAW – ABUSE OF PROCESS**

A claim for abuse of process fails when the defendant used the underlying process for a purpose permitted under the applicable law. In the protective order context, a petitioner who happens to be divorcing their alleged abuser does not abuse the protective order process when they request temporary use and possession of the marital home and the district or circuit court grants relief in an interim and/or temporary protective order.

**TORT LAW – MALICIOUS USE OF PROCESS**

A claim for malicious use of process fails when the defendant had probable cause to initiate the underlying process. In the protective order context, probable cause exists when the district or circuit court found reasonable grounds to believe the petitioner had been abused.

**SANCTIONS – ATTORNEYS' FEES**

Although a court must state the specific facts upon which it based its bad faith finding before awarding attorneys' fees under Maryland Rule 1-341, a court does not abuse its discretion in granting a request when it recounts the facts in a fairly summary fashion and the bad faith conduct is clear in the record.

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 2342

September Term, 2023

_____

NATHAN M. F. CHARLES

v.

TIFFANY SUMMERFIELD CHARLES

_____

Berger,
Nazarian,
Ripken,


JJ.

_____

Opinion by Nazarian, J.

_____

Filed: May 30, 2025


\* Judges Rosalyn Tang and Anne Albright did not participate in the decision to report this opinion pursuant to Maryland Rule 8-605.1.

Pursuant to the Maryland Uniform Electronic Legal Materials Act (§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Gregory Hilton, Clerk

After years of strain in their marriage, Tiffany Summerfield Charles ("Wife") told her husband, Nathan Charles ("Husband"), that she wanted a divorce. Husband, however, was "adamantly opposed to divorce." He attempted one morning "to rekindle an emotional and physical connection" with Wife, but she made clear that his advances were unwanted, rejected them, and reiterated her desire for a divorce. Husband filed a complaint for a limited divorce that afternoon. Wife then filed a petition for a protective order, alleging, among other things, that Husband's "attempt at reconciliation" was sexual abuse. The District Court for Montgomery County granted Wife a temporary protective order and, within that order, gave Wife temporary possession of the marital home and prohibited Husband from entering it. Husband has filed appeals in their divorce case, both of which are pending separately from the case here.

In response to the protective order, Husband initiated a defamation suit against Wife, alleging that she made false statements in her protective order petition. He later filed an amended complaint and dismissed all but two claims, one for abuse of process and one for malicious use of process.[1] After two hearings, the Circuit Court for Montgomery

---

[1] Husband labels this claim "malicious prosecution" in the amended complaint. Generally, however, courts refer to this type of claim as "malicious use of process" in the civil setting:

> Actions for malicious prosecution and malicious use of process have the same essential elements and are often referred to as being essentially synonymous, with most of the cases referring to malicious prosecution as arising out of a criminal proceeding and malicious use of process as arising out of a civil proceeding.

Continued . . .

County dismissed the amended complaint and awarded Wife $12,693 in attorneys' fees. Husband appeals and we affirm the court's ruling on both motions.

## I.     BACKGROUND

### A.     Factual Background

Husband and Wife are married and have two children together. Throughout their fifteen-year relationship, Husband faced financial, professional, and personal setbacks that put significant strains on their marriage. As a result, Wife asked Husband for a divorce on three separate occasions since the end of 2020. The story of this litigation begins with Wife's third request.

Wife made her third request for a divorce on or around July 3, 2023. Husband remained opposed. He spent the next two weeks communicating his positions on the subject to Wife—he argued that they would suffer financially if they divorced; that he would have a superior claim to the marital home because he maintained his professional office space on the property; and that he would not consent to a no-fault divorce. He told Wife she would have to move out of the marital home for a year to establish grounds for a no-fault divorce. Husband also attempted to maintain a physical relationship with Wife during this period.

On July 16, 2023, Wife made clear she would not be leaving the marital home. Husband then presented her with three options: (1) accept the terms he offered her in an

<hr />

*One Thousand Fleet Ltd. P'ship v. Guerriero*, 346 Md. 29, 36–37 (1997) (*quoting Walker v. Am. Sec. & Trust Co. of Wash., D.C.*, 237 Md. 80, 87 (1964)). Because the filing that underlies this claim is a civil filing (*i.e.*, a petition for a protective order), we will refer to this claim as malicious use of process.

email the night before; (2) return to counseling to begin repairing their marriage; or (3) face fault-based divorce proceedings for constructive abandonment. Wife rejected this list and opted to pursue other options.

On the morning of July 20, 2023, Husband went to Wife's bedroom "to attempt to reconcile with her." He spoke to her and, by his reckoning, touched her "in ways designed to entice her into sexual intercourse." Wife rejected his advances and asked him to leave. Husband continued to plead for physical affection from her until, eventually, he left the room. Frustrated, he said, "If you want a divorce, then fucking leave!" as he walked out.

That afternoon, Wife sent the following email to Husband:

> After your actions this morning, I would like to reiterate and make it clear in writing:
>
> - I no longer want to be in this marriage.
>
> - I will not be restarting joint counseling.
>
> - I am pursuing a divorce (see prior communication from my attorney).
>
> - Please stop coming into the room where I am sleeping, and please stop all the unwanted touching without my consent. I have clearly said no and pushed you away/shielded myself now more times than I can count.
>
> Your actions and words this morning scared me. I do not and never did want this to become acrimonious; more than anything else, I'm extremely sad.

### B.    Procedural Background

#### 1.    Divorce and Protective Order Proceedings

Soon after receiving the above email, Husband filed a complaint for a limited divorce in the circuit court, alleging actual and constructive desertion. Through that

3

complaint he sought, among other things, to maintain use and possession of the marital home.

That evening, Wife filed a petition for protection from domestic violence (the "petition") in the District Court for Montgomery County. Husband's actions that morning—actions that he characterized as an "attempt at reconciliation"—served as the basis for that petition. In the petition, Wife requested an order giving possession of the marital home to her and requiring Husband to leave and refrain from reentering it. A commissioner granted the petition, including Wife's requests relating to the marital home, and issued an interim protective order that night. The district court then held an *ex parte* temporary protective order ("TPO") hearing on July 24, 2023. After that hearing, the district court entered a TPO that included, among other things, the same terms about the marital home as the interim order. The district court scheduled a final protective order hearing to be held in the circuit court on August 7, 2023.

The parties entered negotiations regarding child custody in the week leading up to the final protective order hearing. According to the amended complaint in this case, Husband presented Wife with a proposed custody agreement on August 3, 2023. Wife presented a counteroffer on August 5 that Husband rejected. Then on August 7, 2023, Wife dismissed her petition because the parties had reached an agreement on custody. Husband alleged in the amended complaint, however, that Wife dismissed her petition because Husband had "made it clear he would pursue abuse of process and malicious process claims if and when he prevailed in the final protective order hearing."

On August 8, 2023, the parties signed a custody agreement that, according to Husband, contained "terms identical to those in" the agreement he proposed on August 3, 2023. In this agreement, the parties agreed that Wife would have "temporary use and possession of the Marital Home . . . until further Agreement or Court Order." The agreement also covered communication between Husband and Wife:

i. Husband shall not abuse, threaten to abuse, or harass Wife;

ii. Husband shall not contact, attempt to contact, or harass Wife, except that the parties may contact each other via e-mail for purposes of child access / visitation or sharing pertinent information about the wellbeing of the Children. In an emergency, the parties may communicate with each other via text message.

iii. Husband shall not enter Wife's residence at . . . or wherever she resides; and,

iv. Husband shall stay away from Wife's place of employment . . . or wherever she may work.

They filed the custody agreement in their divorce case on August 9, 2023.

### 2. Abuse of Process and Malicious Use of Process Proceedings

On August 21, 2023, Husband filed a defamation suit against Wife, alleging that she had made false statements under oath in her petition, including the statements that his "attempt at reconciliation was [a] '[r]ape or a statutory sexual offense (or attempt)'"; that he sexually assaulted her in the past; and that he "posed a threat to his children."

Counsel for Wife emailed Husband on September 14, 2023, informing him that an absolute privilege applied to all statements Wife had made in the course of the protective order proceedings. Husband responded with the following email:

5

I'm not filing this claim for leverage in my divorce; I'm filing it to clear my name in light of your client's false reports under oath. I made an attempt at a romantic interlude with my own wife under circumstances where I had a reasonable expectation that she might be interested in sex. I went no further when she made it clear she wasn't interested. I left the room of my own volition, angry and frustrated, but in compliance with her wishes. To characterize those events as an attempted rape is egregious.

Moreover, your own client made the allegation hours after I filed a complaint for a limited divorce asking for control of the family home. Under those circumstances, your claim that I'm doing this for leverage in the divorce is nothing less than aggravating.

Let's not forget that she also accused me of child abuse for nothing more than raising my voice. Pick your next move very carefully, or I'll add a second count where she'll have an opportunity to explain that one.

File an answer or a preliminary motion. Save your breath with the threats; I'm a sophisticated party. If you approach me like I'm a chump off then [sic] street, I'll put my back into showing you how wrong you are. If you try to pound the table rather than argue the facts and the law, I will take your client for everything she owns. Owing almost entirely to the conduct of your client, I have nothing to lose.

Wife filed a motion to dismiss Husband's complaint as well as a motion for attorneys' fees on September 28, 2023. Husband didn't file an answer but instead filed the previously referenced amended complaint on October 4, 2023. Husband added to the list of "false statements" that Wife allegedly made in her petition, including that Husband told her "I am not going to rape you, but I am going to fuck you"; that on July 20, 2023, he hit Wife and their children and threatened them with violence; and that Wife and the children have had to lock themselves in a bedroom to protect themselves from Husband. He

6

maintained the single count of defamation *per se* from his initial complaint and added five new counts: defamation *per quod*; abuse of process; malicious use of process; negligence; and intentional infliction of emotional distress.

Wife filed a motion to dismiss the amended complaint on October 19, 2023. Husband filed a notice of partial dismissal the following day in which he voluntarily dismissed, without prejudice, all but two counts: one for abuse of process and one for malicious use of process.

The circuit court held a hearing on Wife's motion to dismiss on February 6, 2024, after which it dismissed the remaining two counts with prejudice. After much back-and-forth among the court and the parties, due primarily to Husband's scheduling conflicts, the court set a hearing for Wife's motion for attorneys' fees for March 22, 2024.

Three days before the hearing, Husband filed a motion for remote appearance, indicating that he was out of town on spring break with his fiancée and her children. He asked for leave to participate remotely in the hearing but that, if not permitted to do so, he would rest on his briefings. The court denied his request and held the hearing as scheduled. After hearing from defense counsel, the court awarded Wife attorneys' fees totaling $12,693.

Husband noted timely appeals from the circuit court's orders granting Wife's motions to dismiss and for attorneys' fees.

We include additional facts as necessary throughout the analysis.

7

## II.    DISCUSSION

Husband raises two questions on appeal.[2] *First*, he argues that the circuit court erred in granting Wife's motion to dismiss the amended complaint because, he says, the amended complaint pleaded facts sufficient to sustain the abuse of process and malicious use of process claims against Wife. *Second*, Husband argues that the circuit court erred in granting Wife's motion for attorneys' fees because he did not act in bad faith in maintaining the underlying suit.

After a thorough review of the record, we conclude that the court did not err in granting Wife's motions to dismiss and for attorneys' fees.

### A.    The Circuit Court Did Not Err in Granting Wife's Motion To Dismiss Because Husband Failed To State A Claim For Which Relief May Be Granted.

Husband argues *first* that the circuit court erred in granting Wife's motion to dismiss the amended complaint because he pleaded all the elements of his abuse of process and

---

[2] Husband phrased the Questions Presented as follows:

1. Whether the Circuit Court erred in dismissing the abuse of process and malicious prosecution counts of the amended complaint where the amended complaint properly alleged that the Appellee filed a fraudulent protective order petition to gain a material advantage in ongoing divorce litigation.

2. Whether Judge Acosta abused his discretion in ordering Appellant to pay Appellee's attorney's fees.

Wife phrased the Questions Presented as follows:

1. Whether the Circuit Court Erred in Dismissing Appellant's Abuse of Process and Malicious Prosecution Counts of the amended complaint; and

2. Whether the Circuit Court Abused its Discretion in ordering Appellant to Pay Appellee's Attorneys' Fees.

malicious use of process claims properly. He argues further that the court dismissed the amended complaint "based on factors immaterial to" the elements of those claims, pointing to various "irrelevant" and "fallacious" observations made by the court. Wife argues in response that the court didn't err when it dismissed Husband's amended complaint because he failed to plead facts sufficient to satisfy any of the three elements of abuse of process (*i.e.*, willful use of a process after it issued in a manner not contemplated by law; an ulterior motive; and damages). She argues as well that Husband failed to plead facts sufficient to satisfy the second and fourth elements of a malicious use of process claim (*i.e.*, that Wife instituted the protective order proceedings without probable cause and that the protective order proceedings terminated in Husband's favor).

We conclude that Husband failed to plead facts sufficient to sustain a claim against Wife either for abuse of process or malicious use of process.

Maryland Rule 2-322(b)(2) provides that a defendant may file a motion to dismiss a complaint if it fails "to state a claim upon which relief can be granted." By filing this motion, the defendant asserts that "despite the truth of the allegations, the plaintiff is barred from recovery as a matter of law." *Porterfield v. Mascari II, Inc.*, 374 Md. 402, 414 (2003). We review a circuit court's decision to grant such a motion "without deference, to determine whether it was legally correct." *Barclay v. Castruccio*, 469 Md. 368, 373 (2020).

"In reviewing the grant of a motion to dismiss, we must determine whether the complaint, on its face, discloses a legally sufficient cause of action." *Fioretti v. Md. State Bd. of Dental Exam'rs*, 351 Md. 66, 72 (1998). In doing so, we must view any well-pleaded facts in the "light most favorable to the non-moving party." *Parks v. Alpharma, Inc.*, 421

Md. 59, 72 (2011) (*quoting RRC Ne., LLC v. BAA Md., Inc.*, 412 Md. 638, 643 (2010)). We also "must 'assume the truth of all relevant and material facts well pleaded and all inferences which can be reasonably drawn from those facts.'" *One Thousand Fleet*, 346 Md. at 40 (*quoting Stone v. Chicago Title Ins. Co.*, 330 Md. 329, 333 (1993)). We will not, however, consider "merely conclusory charges." *Id.*

Generally, we "must confine our review of 'the universe of "facts" pertinent to the court's analysis of the motion' to 'the four corners of the complaint and its incorporated supporting exhibits, if any.'" *Parks*, 421 Md. at 72 (*quoting RRC Ne.*, 413 Md. at 643). Under Md. Rule 5-201, however, we also can take judicial notice of facts that are "generally known within [the Court's] territorial jurisdiction" or "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *See Dashiell v. Meeks*, 396 Md. 149, 175–76 (2006) (holding that Rule 5-201 applies to appellate courts). Accordingly, judicial notice reaches information in "public records such as court documents." *Abrishamian v. Wash. Med. Grp.*, 216 Md. App. 386, 413 (2014).

### 1.    Abuse of Process Claim

The *first* of the two counts left in Husband's amended complaint after his partial dismissal purported to state a claim for abuse of process. To state a cause of action for abuse of process (*i.e.*, a legal proceeding or action), a party must allege facts sufficient to satisfy three elements: "first, that the defendant wilfully used process," such as a subpoena or a protective order, "after it has issued in a manner not contemplated by law; second, that the defendant acted to satisfy an ulterior motive; and third, that damages resulted from the defendant's perverted use of process." *One Thousand Fleet*, 346 Md. at 38 (citations

10

omitted). As these elements show, the "gist" of an abuse of process claim is not in the initiation or even the finalization of the underlying legal action, but rather in "misusing[] or misapplying process justified in itself for an end other than that which it was designed to accomplish." *Metro Media Ent., LLC v. Steinruck*, 912 F. Supp. 2d 344, 350 (2012) (*quoting Wood v. Palmer Ford, Inc.*, 47 Md. App. 692, 705 (1981)).

Husband argues that Wife filed the protective order petition with the ulterior motive of gaining an advantage in their divorce case, *i.e.*, to obtain "long-term possession and use of the marital home as an asset" in the divorce settlement. He claims that this is not a legitimate use of the protective order because "granting access and use of a home in a domestic violence situation is a much different remedy from access and use of a home in a divorce." Wife argues in response that the amended complaint failed to allege sufficient facts to prove that she acted with any purpose "other than to seek the protection she ultimately gained through their consent order . . . ."

The "improper purpose" element of an abuse of process claim "usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or club." *Metro Media*, 912 F. Supp. 2d at 350 (*quoting Wood*, 47 Md. App. at 706–07). Importantly, "[a] bad motive alone is not sufficient to establish an abuse of process." *One Thousand Fleet*, 346 Md. at 38. Rather, the plaintiff must show that the defendant engaged in "[s]ome definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process . . . ." *Id.* (*quoting* W. Keeton, *Prosser & Keeton on the Law of Torts* § 121, at 897 (5th ed. 1984)).

11

In *Metro Media Entertainment, LLC v. Steinruck*, 912 F. Supp. 2d 344 (2012), for example, the United States District Court for the District of Maryland dismissed Mr. Steinruck's abuse of process counterclaim partly because he failed to satisfy the improper purpose element. *Id.* at 352. Metro Media had filed a copyright infringement action against forty-seven unnamed defendants for illegally downloading and/or uploading one of their pornographic films. *Id.* at 346–47. The court dismissed the claims against all but one defendant—Mr. Steinruck. *Id.* at 348. Metro Media then sent a settlement letter to Mr. Steinruck stating, in part, that they would formally name him as a defendant unless he accepted the proposed settlement offer. *Id.* Mr. Steinruck filed a counterclaim alleging abuse of process. *Id.* He claimed all the allegations against him were false and that Metro Media's settlement offer amounted to an "extortive shakedown letter . . . ." *Id.*

The court found that Mr. Steinruck complained about the *issuance* of the copyright infringement suit, which falls under malicious use of process. *Id.* at 351. Moreover, the facts in the counterclaim "that could potentially support an abuse of process claim" were insufficient. *Id.* at 352. As to the subpoena Metro Media had issued against Mr. Steinruck's Internet Service Provider, the court found that Metro Media did so for the lawful purpose of obtaining Mr. Steinruck's name and address so they could file an amended complaint and issue summonses. *Id.* And "[w]hile the fact that [Metro Media] also used that information to convey a settlement offer [was] clearly 'outside the scope' of the subpoena, the purpose of the settlement letter was not 'to attain some collateral objective.' Indeed, it proposed to resolve the suit." *Id.* (citations omitted). The court explained that the only "threat" Metro Media made in the settlement letter was that they "would 'formally name

[Mr. Steinruck] as a defendant' if he declined to settle"—a "threat" that is "no different from those routinely presented in demand letters." *Id.* Although Metro Media likely had "substantial leverage" in the settlement negotiations in that Mr. Steinruck would be hard-pressed not to reveal his identity "given the salacious nature of the film" (though he had already revealed his identity in his counterclaim), Metro Media didn't engage in any wrongdoing by offering to settle before litigation. *Id.*

In this case, Husband asserts that Wife used the interim and temporary protective orders to obtain possession and use of the marital home while the divorce proceedings were pending and "to extract concessions from [him] during the divorce negotiations." The amended complaint, however, fails to plead facts that could support this conclusory claim of an improper purpose. Temporary use and possession of a shared residence is a permissible form of relief in protective orders. *See* Md. Code (1999, 2019 Repl. Vol.) § 4-504.1(c)(4)(i), (iii) of the Family Law Article ("FL") (commissioner entering interim protective order may order respondent to leave shared residence and award temporary use and possession of the home to petitioner); FL § 4-505(a)(2)(iii)–(iv) (court entering TPO can do the same). Nevertheless, Husband argues that the relief offered under these statutes is distinct from a property agreement in a divorce settlement. Even if this were an accurate characterization (a question we need not address here), though, the amended complaint fails to allege facts sufficient to establish that Wife used the protective order process to gain an unfair or inappropriate advantage in the divorce rather than for the legitimate purpose of securing safety from an alleged abuser.

13

According to the amended complaint, Wife used the protective order process to remove Husband from the marital home and prohibit him from returning and to have the court award her temporary use and possession. Again, this is a legitimate use of a protective order. *See* FL § 4-504.1(c)(4)(i)–(iii); FL § 4-505(a)(2)(iii)–(iv). Husband also acknowledged in the amended complaint that the district court "found that [Wife] had met her *prima facie* burden to obtain a Temporary Protective Order." Under the protective order statutes, a commissioner or district court first must find, before issuing an interim or temporary protective order, that "there are reasonable grounds to believe" the petitioner had been abused. *See* FL § 4-504.1(b); FL § 4-505(a)(1). Based on that allegation, then, Husband conceded that the district court found reasonable grounds to believe Wife was abused.

He then alleged that Wife chose to withdraw her petition before the final hearing because he had "made it clear he would pursue abuse of process and malicious process claims if and when he prevailed in the final protective order proceeding." But he alleged no facts to suggest Wife used the TPO as a bargaining chip or as a threat to coerce Husband into signing the custody agreement. And he admitted that he consented to the custody agreement and alleged no facts that could suggest that he did so under duress or coercion.

At bottom, the facts in the amended complaint tell a story of a person who sought and obtained relief from an abusive situation (as found by the commissioner and district court), then dismissed the protective order proceedings when the alleged abuser consented to a custody agreement that resolved the matter. Aside from the unsupported conclusion that Wife "intended to gain an improper secondary benefit" after the court issued the TPO,

14

the amended complaint failed to allege facts that could support a finding that Wife used the protective order process for any reason other than those permitted under the protective order statutes. Moreover, even if Wife had told Husband that she would continue with protective order proceedings—proceedings that, as found by the commissioner and district court, she had legitimate grounds to pursue—if he didn't accept her custody terms, that settlement would have been no different from the kinds of settlement terms that *Metro Media* considered appropriate. 912 F. Supp. 2d at 352. In any event, Husband hasn't alleged that Wife made such a "threat." *Id.* And even if Wife had acted with the alleged ulterior motive, that would be insufficient on its own without allegations that she used the TPO improperly after it issued. *See id.* (where court found no improper purpose in Metro Media's issuance of subpoena or settlement offer, "the fact that [Metro Media] may have had an ulterior motive [was] inconsequential to the abuse of process analysis"); 18 M.L.E. *Process* § 35, Westlaw (database updated Feb. 2025) (In abuse of process claims, "no liability is imposed where the defendant has merely carried out the process to its authorized conclusion, even though with bad intentions." (footnotes omitted)).

Finally, as to the third element, Husband alleged that Wife's "false statements caused [him] to lose at least one client, resulting in a loss of at least $5,000.00 in fees." This does not satisfy the damages element for an abuse of process claim. "A cause of action for civil abuse of process in Maryland requires that the plaintiff establish that an arrest of the person or a seizure of property of the plaintiff resulted from the abuse of process." *One Thousand Fleet*, 346 Md. at 45. Loss of revenue falls under neither category. *See id.* at 44–45 (lost money, project delays, increased construction, legal costs, and financing costs do

15

not satisfy the damages element of an abuse of process claim where real estate development company had to delay construction to litigate underlying suits). "[A]n injury to the plaintiff's business or good name" also will not suffice to establish damages in the abuse of process context. *Id.* at 46 (*quoting Bartlett v. Christhilf*, 69 Md. 219, 231 (1888)). Husband, then, "fail[ed] to allege legally cognizable damages" for his abuse of process claim. *Id.* at 43.

Reading the facts in the light most favorable to Husband, the amended complaint failed to allege facts sufficient to satisfy any of the elements of an abuse of process claim. We affirm the court's dismissal of this claim with prejudice.

### 2. Malicious Use of Process Claim

The *second* count that remained in Husband's amended complaint was malicious use of process. Unlike a claim for abuse of process, which centers on the improper use of a process *after* a case or action has been initiated, a claim for malicious use of process is concerned with the *bringing of* the case in the first instance. *Id.* at 39 (*citing Walker v. Am. Sec. & Trust Co. of Wash., D.C.*, 237 Md. 80, 87 (1964)). To state a cause of action for malicious use of process, a party must allege facts sufficient to satisfy five elements:

> First, a prior civil proceeding must have been instituted by the defendant. Second, the proceeding must have been instituted without probable cause. . . . Third, the prior civil proceeding must have been instituted by the defendant with malice. . . . Fourth, the proceedings must have terminated in favor of the plaintiff. . . . Finally, the plaintiff must establish that damages were inflicted upon the plaintiff by arrest or imprisonment, by seizure of property, or other special injury which would not necessarily result in all suits prosecuted to recover for a like cause of action.

16

*Id.* at 37 (cleaned up). All five elements "must co-exist to maintain the action," so a "plaintiff's failure to satisfy even one element mandates dismissal." *Id.* at 41. We need only address two elements in this case—lack of probable cause and malice—to affirm the court's dismissal of Husband's malicious use of process claim. *Owens v. Graetzel*, 149 Md. 689, 696 (1926) (want of probable cause and malice are two "indispensable elements" in malicious use of process claim).

Husband alleged in the amended complaint that Wife filed the petition without probable cause. Specifically, he claimed that his conduct "did not constitute the crimes that [Wife] claimed [he] had committed," and "no reasonable person in her position would fear for her own safety or the safety of her children in the context of [his] cited conduct." The fact that the commissioner and the district court found reasonable grounds to believe Wife had been abused, however, established that she had probable cause to initiate the protective order proceedings, a judicial finding Husband knew well about before filing his complaint.

"Probable cause for purposes of malicious use of process means 'a reasonable ground for belief in the existence of such state of facts as would warrant institution of the suit or proceeding complained of.'" *One Thousand Fleet*, 346 Md. at 37 (*quoting N. Point Const. Co. v. Sagner*, 185 Md. 200, 208–09 (1945)). "[A]s a matter of law, 'a judgment or decree by a court of competent jurisdiction adverse to the defendant [in the original suit] is, in general, conclusive proof of probable cause,'" even if the judgment is later reversed on appeal. *Campbell v. Lake Hallowell Homeowners Ass'n*, 157 Md. App. 504, 533 (2004) (*quoting Herring v. Citizens Bank & Trust Co.*, 21 Md. App. 517, 540 (1974)). In *Campbell v. Lake Hallowell Homeowners Ass'n*, 157 Md. App. 504 (2004), for example, the district

court ruled in the appellee's favor in the initial suit and issued a peace order against the appellant. *Id.* at 533. Even though the circuit court later vacated the peace order on appeal, we held that the appellee's initial victory in the district court was "'conclusive proof' that [the appellee] had probable cause to initiate the process." *Id.* (*quoting Herring*, 21 Md. App. at 540).

Here, a judicial officer found reasonable grounds to issue a protective order for Wife—not once, but *twice*. On July 20, 2023, the commissioner who handled Wife's petition found reasonable grounds to believe that Husband abused her and, as a result, issued an interim protective order. Four days later, the district court made the same finding and issued a TPO. Husband acknowledged as much in the amended complaint, stating that Wife "had met her minimal *prima facie* burden to obtain a [TPO]." As a matter of law, then, Wife had probable cause to initiate protective order proceedings against Husband. *See id.*; *Herring*, 21 Md. App. at 540 ("The satisfaction of the confessed judgments was . . . conclusive proof of probable cause for the filing of the judgments.").

Husband also alleged that Wife "instituted the [protective order] proceeding with malice, specifically in retaliation for [Husband] filing a complaint in limited divorce." Even if she had acted with malintent, however, Husband's claim cannot survive when Wife in fact had probable cause to file the petition against Husband. "Malice" in the context of a malicious use of process suit "'means that the party instituting proceedings was actuated by an improper motive.'" *Havilah Real Prop. Servs., LLC v. Early*, 216 Md. App. 613, 633 (2014) (*quoting One Thousand Fleet*, 346 Md. at 37). "Improper motive is narrowly defined to mean there was *no legal basis* for the assertion of the claim." *Id.* (emphasis

18

added). Malice "'may be inferred from a lack of probable cause.'" *Id.* (*quoting One Thousand Fleet*, 346 Md. at 37). "But where probable cause exists, 'malice, however strong, will not constitute a cause of action.'" *Id.* (*quoting Walker*, 237 Md. at 89); *see also Herring*, 21 Md. App. at 545 ("With the collapse of the 'want of probable cause' element, collapses also the main support for the appellants' theory of malice—the permitted inference of malice from the want of probable cause." (*quoting Kennedy v. Crouch*, 191 Md. 580, 587 (1948))); *Owens*, 149 Md. at 697 ("[A] sinister and malicious motive does not make an act wrongful so long as the act is within the party's legal rights."). Because Wife had probable cause to initiate protective order proceedings, Husband flunks the malice element as well.

The amended complaint fails to allege facts sufficient to satisfy two "indispensable elements" of a malicious use of process claim. *Owens*, 149 Md. at 696. Therefore, we affirm the circuit court's dismissal of this claim with prejudice.

**B.      The Circuit Court Did Not Err In Granting Wife's Motion For Attorneys' Fees Because The Record Supports Its Bad Faith Finding.**

The *second* question Husband raises on appeal is whether the court abused its discretion in granting Wife's motion for attorneys' fees. Husband argues that the court didn't have the authority to award attorneys' fees to Wife because the amended complaint contained cognizable claims. He then argues that even if the court had the authority to award attorneys' fees, the court abused its discretion in doing so because it "erroneously assumed" Husband would not prevail on his claims.

Wife contends, as she did in connection with the first issue, that Husband didn't plead sufficient facts to sustain a claim for abuse of process or malicious use of process. Pointing to specific actions taken by Husband, she further argues that "the extreme nature of [Husband's] bad faith" throughout this case merited an award of attorneys' fees to Wife.

Wife's claim for attorneys' fees arises under Maryland Rule 1-341, which authorizes a court to award fees "if the court finds that the conduct of any party in maintaining or defending any proceeding was in bad faith or without substantial justification." Md. Rule 1-341(a). This Rule is "'intended to function primarily as a deterrent' against abusive litigation." *Christian v. Maternal-Fetal Med. Assocs. of Md., LLC*, 459 Md. 1, 19 (2018) (*quoting Worsham v. Greenfield*, 435 Md. 349, 369 (2013)). It should not, however, "be construed as a punishment," but rather "as a mechanism to place 'the wronged party in the same position as if the offending conduct had not occurred.'" *Id.* (*quoting Major v. First Va. Bank-Central Md.*, 97 Md. App. 520, 530 (1993)). "Because the rule serves as a deterrent and is intended to compensate as opposed to punish, an award of attorneys' fees is considered 'an "extraordinary remedy" which should be exercised only in rare and exceptional cases.'" *Id.* (*quoting Barnes v. Rosenthal Toyota, Inc.*, 126 Md. App. 97, 105 (1999)).

As we explained in *Needle v. White*, 81 Md. App. 463 (1990), "[t]he objective of [Rule 1-341] is to fine-tune the judicial process by eliminating the abuses arising from . . . litigation that is clearly without merit." *Id.* at 470. The Court cautioned, however, "that over zealous pursuit of the objective may result in . . . 'stifling the enthusiasm or chilling the creativity that is the very lifeblood of the law.'" *Id.* (*quoting Eastway Constr.*

*Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir. 1985)). Consequently, "judges have the responsibility of properly applying the rule to calibrate its application such that abusive practices are deterred and aggrieved parties are compensated without stunting the development of the law." *Christian*, 459 Md. at 20.

The court must make two findings before awarding attorneys' fees: (1) that the party's conduct during a proceeding was without substantial justification or done in bad faith; and (2) that the party's action warrants the assessment of fees. *Id.* at 20–21. We review the first finding for clear error or error in the application of the law. *Id.* at 21 (*citing Inlet Assocs. v. Harrison Inn Inlet, Inc.*, 324 Md. 254, 267–68 (1991)). "So long as 'there is *any competent material evidence* to support the factual findings of the [ ] court, those findings cannot be held to be clearly erroneous.'" *Id.* (emphasis added) (*quoting Major*, 97 Md. App. at 531). We then apply an abuse of discretion standard to the second finding that the party's bad faith or lack of substantial justification warranted a grant of attorneys' fees. *Id.* "So long as the hearing judge exercises his or her discretion reasonably, [we] will not reverse the judgment under review." *Id.*

This standard was met here. As to the *first* question, "a court must make an explicit finding that a party conducted litigation either in bad faith or without substantial justification." *URS Corp. v. Fort Meyer Constr. Corp.*, 452 Md. 48, 72 (2017). A party acts "in bad faith" for purposes of Rule 1-341 if they initiate or maintain an action "vexatiously, for the purpose of harassment or unreasonable delay, or for other improper reasons." *Inlet Assocs.*, 324 Md. at 268. "Bad faith may also be found when a party alleges causes of action without a basis in fact, but rather for tactical or settlement purposes." Paul V. Niemeyer &

Linda M. Schuett, *Maryland Rules Commentary* 157 (6th ed. 2024). At the close of the attorneys' fees hearing in this case, the circuit court made this very finding, albeit in a relatively summary fashion.

"[T]he test for determining lack of substantial justification"—a related but distinct concept from bad faith—"is whether [the complainant] had a reasonable basis for believing that the claims would generate an issue of fact for the fact finder." *Inlet Assocs.*, 324 Md. at 268; *see also URS Corp.*, 452 Md. at 72–73 ("[A] claim or litigation position is 'without substantial justification' if it is not fairly debatable, not colorable, or not within the realm of legitimate advocacy." (footnotes omitted)). A finding of a lack of substantial justification doesn't arise "merely because a cause of action is dismissed." *Christian*, 459 Md. at 25. Similarly, the court may not find a lack of substantial justification "exclusively on the basis that '[the] court rejects the proposition advanced by counsel and finds it to be without merit.'" *Id.* (quoting *State v. Braverman*, 228 Md. App. 239, 260 (2016)); *see also Black v. Fox Hills N. Cmty. Ass'n, Inc.*, 90 Md. App. 75, 84 (1992) ("[Rule 1-341] does not apply simply because a complaint failed to state a cause of action.").

It's true that in making a finding of bad faith or lack of substantial justification, the court must state the facts upon which it based its findings. *See URS Corp.*, 452 Md. at 72 (court must provide "a 'brief exposition of the facts upon which [its finding of bad faith/lack of substantial justification] is based'" (quoting *Talley v. Talley*, 317 Md. 428, 436 (1989))). Without a "definite indication of the judge's views of the facts," we have nothing to review for clear error. *Century I Condominium Ass'n, Inc. v. Plaza Condominium Joint Venture*, 64 Md. App. 107, 116 (1985); *see, e.g., Christian*, 459 Md.

at 22 ("Because there are no findings by the hearing judge that Petitioner acted in bad faith, we have nothing under the bad faith prong of Rule 1-341 to review.").

This case, though, didn't require the circuit court to make detailed factual findings or resolve contested factual allegations. The question of bad faith turned on Husband's characterizations of Wife's decision to seek and obtain a protective order and the statements she made to the district court in support of her petition. Husband claimed, and alleged in his amended complaint, that her statements defamed him and constituted abuse of process and malicious use of process. He eventually dismissed the four defamation- and emotional distress-related counts but pursued abuse of process and malicious use of process claims to the bitter end. None of that is contested.

Although Husband contended, and contends here as well, that he stated claims for abuse of process and malicious use of process all along, he lost on a key legal point: the district court found at the *ex parte* stage that the allegations in Wife's petition for protective order were supported by probable cause. As we have discussed above, this finding gutted (in advance) his abuse of process and malicious use of process claims. And his eventual decision to settle the protective order proceeding by signing the custody agreement doesn't help him—he mischaracterizes that resolution as a dismissal of the final protective order, which it wasn't, and if anything agreed to most, if not all, of the relief that Wife sought.

Again, none of these facts are contested. Husband disputes their legal significance on the merits and with regard to attorneys' fees. But the factual and procedural backdrop for the circuit court's consideration of attorneys' fees left no disputes of fact for the court to resolve. The only questions were whether Husband filed and pursued the abuse of

23

process and malicious use of process claims in bad faith or lacked a substantial justification for bringing and pursuing them. *See* Md. Rule 1-341(a).

Wife, both at the motions hearing and on appeal, points to several actions taken by Husband as evidence of his bad faith in maintaining the underlying suit:

- Filing a defamation suit against Wife in connection with privileged statements made in her petition, and doing so without first researching the law on judicial privilege relating to defamation suits;

- In the complaint, admitting to the conduct that formed the basis of Wife's petition;

- Refusing to dismiss the defamation complaint after defense counsel notified him that Wife enjoyed an absolute privilege from suit in connection with her statements in the petition;

- Maintaining his defamation claims against Wife and adding four additional causes of action in an amended complaint, all of which were grounded in the same privileged statements, despite defense counsel's warning that Wife had an absolute judicial privilege;

- Dismissing four counts in his amended complaint, without prejudice, only after Wife filed a motion to dismiss, and continuing on the abuse of process and malicious prosecution claims;

- Filing a motion to consolidate this proceeding with the concurrent family law proceeding;

- Sending an email to defense counsel at 1:38 a.m. on the morning of the hearing on Wife's motion to dismiss the amended complaint, threatening to refer defense counsel to Bar Counsel for filing a motion for attorneys' fees:

> Please be advised that I plan to make an oral motion for attorneys fees today – in response to YOUR bad faith claims for attorneys fees. While I had the moral courage to dismiss potentially unmeritorious counts, you had no such scruples… I will give you one opportunity at the start of today's hearing to retract your claim for attorneys fees. If you fail to take it, I will ask for attorneys fees against you and file an appropriate Rule

24

11 motion (or whatever you people call it in state court). I will refer you to Bar Counsel for persisting in a claim with no merit – violations of the very Maryland Rule of Professional Conduct 19-303.1 you cited in your own briefing.

- Threatening to file a disciplinary complaint against defense counsel for making an argument at the motion to dismiss hearing:

> [DEFENSE COUNSEL]: I don't have [a Rule 1-341] motion until and unless Your Honor grants our motion to dismiss, so I haven't raised it . . . . But I'm happy to address it, or I'm happy to pursue it for another day if Your Honor agrees with our position. But I will tell the Court and I will tell Husband, if Your Honor denies our motion to dismiss, I withdraw that [Rule 1-341] motion.
>
> [THE COURT]: Okay. Thank you.
>
> [HUSBAND]: First of all, I'd like to withdraw it now because it's frivolous. Okay. Regardless of how Your Honor, you end up ruling on the substance of the motion to dismiss. This is at least a colorable enough claim that they should not even have a petition for attorney's fees on the table right now. So I want that off the bat off the table right now.
>
> And frankly, if they maintain this silliness, I'm going to bar counsel with it. Also, know the standard for protective order is not a subjective standard. It's an objective —
>
> [THE COURT]: I thought you were done.
>
> [HUSBAND]: Oh, no, sir. I'm sorry. Do I not get a chance to readdress the Court?
>
> [THE COURT]: No, he's got the burden.
>
> [HUSBAND]: Oh.
>
> [THE COURT]: He stood up, said what he had to say. You addressed it.

25

[HUSBAND]: I'll just hit him for —

[THE COURT]: (Unintelligible).

[HUSBAND]: — with a 3.3 violation for misstating the law in a petition order.

[THE COURT]: So you threaten him with —

[HUSBAND]: Yes. I'm threatening him with objective violations of professional standards.

[THE COURT]: For arguing in a hearing. Okay.

- Refusing to appear at the hearing on Wife's Motion for Attorneys' Fees despite the court scheduling the hearing over six weeks out to accommodate Husband's schedule; and

- Appealing the court's order on the motion to dismiss in an effort "to further delay the disposition of the underlying matter and to further require [Wife] to expend attorneys' fees in an appellate proceeding."

At the close of the hearing on Wife's request for attorneys' fees, the court recounted the facts on which it was basing its decision, albeit in a fairly summary fashion. The court incorporated Wife's counsel's "history of the case prior to folks coming into court, how [defense counsel] tried to mitigate and/or deal with the situation prior to pleadings continuing to be filed." It explained further that Husband refused to appear at a hearing that the court scheduled to accommodate his plans; that Husband filed a last-minute motion to appear remotely, which contained unnecessary remarks regarding the court's rulings; and that Husband's filings all boil down to the argument that "people can't say things in pleadings that he is unhappy with." With no further counterargument to consider because Husband skipped the hearing, the court then stated its finding that he acted in bad faith:

> I have read all of the pleadings that Husband did file on his behalf. I don't find them persuasive. Ultimately, I am going to

26

> find certainly under the rules, that he did continue this litigation in bad faith.
>
> * * *
>
> I am going to grant the award that's requested by counsel on behalf of the defendant, [Wife]. I'm going to find that he certainly could have stopped this at any time and certainly the arguments that he put both in writing and orally in court just don't meet any bar that we should be meeting at this. Accordingly, I am going to grant the request [of] $12,693.

In this Court, Husband challenges the fee award only on threshold grounds. To the extent he fights the fee award at all—it consumes only a page-and-a-half of his opening brief and barely a paragraph of his reply—he simply doubles down on his broader position that the circuit court was wrong on the merits of his abuse of process and malicious prosecution claims and, therefore, lacked the authority to award attorneys' fees at all. Importantly, Husband doesn't take issue with the extent or detail of the circuit court's bad faith findings, nor does he raise any specific issue with the amount or reasonableness of the fees awarded. He swung for the fences and, on this record, missed.

To be sure, the standard directs the circuit court to state the bases for its findings, and in this case the court's factual narrative doesn't detail particular instances of bad faith or make explicit findings about what conduct formed the basis of its bad faith finding. *See Barnes*, 126 Md. App. at 106 ("[A] court may not impose sanctions under Rule 1-341 without rendering **specific findings of fact** on the record as to a party's bad faith or lack of substantial justification in pursuing a cause of action."); *see also* Paul V. Niemeyer & Linda M. Schuett, *Maryland Rules Commentary* 160 (6th ed. 2024) ("A general finding that a party has not shown good faith is insufficient because a lack of good faith does not

27

demonstrate bad faith."). Had Husband contested the connection between the detail underlying the court's reasoning and the specific finding of bad faith, we might find ourselves compelled to remand for the purpose of asking the circuit court to connect the dots more directly and explicitly.

Nevertheless, in light of these particular claims and Husband's arguments on appeal, we are comfortable that the court found Husband's bad faith (or absence of substantial justification)[3] right where he laid it: at the threshold. The court reviewed the history of the case and found Husband's arguments on the merits unpersuasive and, effectively, that his claims were brought and continued in bad faith. It wasn't just that he lost on the merits. The court noted that Husband kept repeating the same overarching and frivolous complaint in response both to the merits and Wife's fee request: "that people can't say things in pleadings that he is unhappy with," even in the face of dispositive case law and contrary findings in the district court. And although the circuit court didn't cite them specifically in its ruling, the hearings on the merits and the filings and exhibits contain multiple examples of his aggressively litigious attitude to the end of his marriage and its aftermath. As just two examples, Husband claimed that he came to the final protective order hearing "ready

---

[3] Although the court phrased its conclusion solely in terms of bad faith, its comments seem to lean harder in support of a finding that Husband continued the suit without substantial justification. The two concepts are related but distinct, the court didn't mention it, and the findings that underly each won't necessarily be the same. Husband hasn't raised this distinction, but we are bolstered in our decision to affirm this fee award by our sense that the record in this case would support either finding independently.

28

for war" and threatened "going to" Bar Counsel if Wife didn't withdraw her attorneys' fees petition. Then he didn't appear for the fee petition hearing at all.

Ultimately, we can see that the circuit court considered the entire record, including Husband's opposition to Wife's motion for attorneys' fees, the history of the protective order proceedings, and Husband's insistence on pursuing these meritless collateral complaints against his wife alongside their divorce proceedings for what the court seemed to agree were inappropriate motives. Under these circumstances, we see no abuse of discretion in the court's decision to grant Wife's motion for attorneys' fees in the (unchallenged) amount requested.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED. APPELLANT TO PAY COSTS.**